OPINION
The following appeal arises from the decision of the Youngstown Municipal Court finding appellant, Eugene Mitchell guilty of driving while under the influence of alcohol ("DUI"), in violation of R.C. 4511.19, failure to stay in a marked lane in violation of R.C. 4511.33, and improper use of a firearm in violation of R.C. 2923.16. For the following reasons, the decision of the trial court is affirmed.
 I. FACTS
On October 28, 1997, Mahoning County Sheriff's Deputy Carmen Constantino observed a four door Buick traveling northbound on Market Street in Youngstown, Ohio. The vehicle was seen being driven in between the two northbound lanes of travel. The vehicle was also seen swaying in between the two lanes. Approximately four blocks later, Deputy Constantino effectuated a stop. As Deputy Constantino proceeded to the vehicle to speak with the driver, appellant, Deputy Constantino noticed that appellant had a strong odor of alcohol on his breath, had blood shot eyes, and his speech was slurred. Deputy Constantino asked appellant to exit his vehicle and perform a field coordination test. Upon opening the door Deputy Constantino observed a .38 caliber pistol lying on the floor of the vehicle by appellant's feet. The deputy later discovered seven rounds of ammunition in the pistol and an extra magazine with seven rounds of ammunition on the floor of the vehicle. A .25 caliber Raven and a 9 mm. Beretta with rounds of ammunition were discovered in the trunk of the vehicle. Appellant was then placed under arrest. Appellant refused to do any field coordination tests or chemical testing.
Appellant was indicted on one count of driving under the influence of alcohol in violation of R.C. 4511.19, one count of driving outside of a marked lane in violation of R.C. 4511.33, one count of using weapons while intoxicated and one count of improperly handling a weapon in violation of R.C. 2923.16.
On December 10, 1997, appellant filed a Motion to Suppress Evidence and in the alternative a request for a hearing on a Motion in Limine. On December 23, 1997, the trial court determined that there was probable cause for the stop and overruled the Motion to Suppress. The court then found appellant guilty on Counts One, Two and Four. On January 2, 1998, appellant filed a notice of appeal and a Motion to Stay the Proceedings Pending Appeal.
 II. STANDARD OF REVIEW
The standard of review in a motion to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286, 288, citingTallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608.
In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. State v.Mills (1992), 62 Ohio St.3d 357, 366, citing State v. Fanning
(1982), 1 Ohio St.3d 19, 20. However, once accepting those facts as true, we must independently determine as a matter of law and without deference to the trial court's conclusion, whether the trial court met the applicable legal standard. State v. Williams
(1993), 86 Ohio App.3d 37, 41, citing State v. Dreher (July 28, 1992), Highland App. No. 786, unreported, and State v. Fausnaugh
(April 30, 1992), Ross App. No. 1778, unreported.
 III. ASSIGNMENT OF ERROR NO. ONE AND TWO
Appellant raises two assignments of error on appeal. Due to the related nature of the issues, the two assignments of error will be considered together herein. Appellant's first assignment of error reads:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THERE IS INSUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT A FINDING THAT THERE WAS PROBABLE CAUSE TO STOP HIM FOR OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL."
Appellant's second assignment of error reads:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING THE MOTION TO SUPPRESS DUE TO THE FACT THAT THE SEIZURE WAS UNREASONABLE CONSIDERING THE SHORT AMOUNT OF TIME AND DISTANCE THE APPELLANT WAS OBSERVED, THE OFFICER'S REPORT AND HIS COURTROOM TESTIMONY CONTRADICTED IN A NUMBER OF KEY AREAS, AND THE STOP OF APPELLANT'S CAR WAS PRE-TEXTUAL AND BASED SOLELY ON A `HUNCH'
Appellant argues that the evidence in this case was insufficient to establish a reasonable suspicion that appellant was violating any law at the time Deputy Constantino stopped him. Appellant contends that swaying while driving does not give rise to "articulable facts or circumstances creating a reasonable suspicion" that appellant was violating the law. Furthermore, appellant alleges that the stop was based on a mere hunch that appellant was driving while under the influence of alcohol. Appellant explains that the distance and time during which Deputy Constantino observed appellant before stopping him was too short to give rise to a reasonable and articulable suspicion that a violation had been committed.
 A. LAW
The Fourth Amendment of the United States Constitution gives people the right "to be secure * * * against unreasonable searches and seizures." It is clear that the stop of a motorist is a seizure governed by Fourth Amendment requirements. See Delawarev. Prouse (1979), 440 U.S. 648.
The United States Supreme Court has held that a police officer may stop and question a person if there are reasonable grounds to believe that the person is wanted for past criminal conduct, is currently engaged in criminal conduct, or will in the future be involved in a crime. United States v. Cortez (1981),449 U.S. 411, 417. The standard applied to an investigatory stop is "reasonable suspicion." Terry v. Ohio (1968), 392 U.S. 1. Reasonable suspicion is described "simply as `a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas v. United States (1996), 517 U.S. 690,116 S.Ct. 1657, 1662, citing United States v. Cortez (1981),449 U.S. 411. The court makes an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. Dayton v. Erickson (1996), 76 Ohio St.3d 3,6. Thus, the question whether a Fourth Amendment violation occurred in this case depends upon an objective assessment of the officer's actions at the time of the traffic stop, and not upon the officer's actual (subjective) state of mind. Id. at 11. Constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. Whrenv. United States (1996), 517 U.S. 806. As the Supreme Court of Ohio held in Erickson, supra:
 "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in some more nefarious criminal activity." Id. at 11.
An appellate court has authority to review trial court determinations of reasonable suspicion de novo. Ornelas v.United States (1996), 517 U.S. 690, ___, 116 S.Ct. 1657, 1662; State v.Dodson (Feb. 10, 1997), Warren App. No. CA96-07-058, unreported.
In State v. Drogi (1994), 96 Ohio App.3d 466, this court held that where there is no evidence of erratic driving, "other than what can be considered as insubstantial drifts across the lines [,]" there is not sufficient evidence to justify an investigative stop. Id. at 469. However, this court further clarified that "weaving may be sufficient to justify an investigative stop."] Id. Because there was no other evidence which would indicate erratic driving, speeding, or other criminal activity, we held that the stop was unreasonable. Id. at 469-470.
Likewise in State v. Williams (1993), 86 Ohio App.3d 37, the Pickaway County Court of Appeals held that minor weaving over a two mile highway did not give rise to a suspicion of criminal activity. Id. at 43. The court of appeals distinguished the case from its previous decisions in which there was repeated weaving within a short distance or involved erratic driving. Id.
 B. ANALYSIS
Deputy Constantino testified at the suppression hearing as follows:
 "A. On 10/28/97 at approximately 2150 hours, I was traveling north on Market Street along with my partner Captain Jeff Chance. We observed a red Buick, four-door, with Ohio registration ABY-3472.
 It was traveling north on Market Street. The vehicle, when we first observed it was nearer to Glenhaven. The vehicle was traveling northbound at approximately 25 miles an hour.
Q. Was it in the middle lane?
A. It was in lane number one of two lanes.
 Q. So are you traveling in the same direction as this vehicle?
A. The same direction, north.
Q. Are you behind it?
A. Correct.
Q. About how far behind it were you?
A. Approximately three car lengths.
 Q. And you saw it — how did you say it was traveling?
 A. It was traveling northbound and it was traveling in between lanes one and two. It was driving down the middle.
 Q. And you were both going in the same direction?
A. North, correct.
 Q. And approximately how many blocks did you observe the vehicle moving?
 A. Well, approximately four blocks from where we affected the traffic stop.
 Q. How many times would you say it went between the lanes?
 A. The vehicle swayed between lanes probably two or three times.
* * *
 Q. How much of the vehicle was going over those middle lanes?
 A. The whole vehicle, the entire car swerved into one lane and then went back into the other lane.
 Q. And you say that occurred two or three times?
A. Correct.
* * *
 Q. Was there any turn signal on while the vehicle swayed between the lanes?
A. No." (Tr. at 5-7).
 Deputy Constantino added that it was necessary to pull appellant over because there was heavy traffic and he wanted to prevent an accident. Deputy Constantino testified:
 "A. Due to the heavy traffic on Market Street at that time of night, we thought it best to pull him over to see what was going on.
 Q. And how did you describe the traffic that night?
A. There was heavy traffic.
 Q. So heavy meaning — now you're behind Mr. Mitchell is that correct?
A. Correct.
 Q. And there are two lanes going north, is that correct?
A. Correct.
 Q. So there is a car in front of Mr. Mitchell and one that you see in front of you?
A. Yes.
Q. Okay. Is there another car behind you?
A. Yes.
* * *
 Q. Why would there being heavy traffic make you pull over a person on a marked lanes violation where you might otherwise not do it?
A. For fear of him causing an accident.
 Q. Even though you didn't actually see him come close to causing one?
A. Yes." (Tr. at 52-53).
Deputy Constantino's incident report affirms that he observed the Buick traveling north on Market Street in the middle of the two lanes of travel. The report also verified that the vehicle was swaying between the two lanes of travel.
The trial court's decision not to suppress the evidence was based in part upon the credibility of Deputy Constantino's testimony at the hearing. The trial court was in the best position to resolve questions of fact and evaluate the credibility of Deputy Constantino's testimony. See, State v. Venham (1994),96 Ohio App.3d 649, 653. Accepting Deputy Constantino's testimony as being true, we must only determine whether the correct legal standard was applied. See, State v. Williams (1993), 86 Ohio App.3d 37,41.
Detective Constantino's admission that he pulled appellant over because he suspected that he may have been under the influence of alcohol is irrelevant. The Supreme Court of Ohio has previously determined that the officer's ulterior motives for stopping the vehicle are not unreasonable when the stop is based on an observation that a traffic violation has occurred. See,Dayton v. Erickson, supra at 11. Deputy Constantino observed appellant commit a traffic violation (i.e., failure to remain within the marked lanes). Thus, the stop is not unreasonable on these fact:s alone.
Unlike Drogi, supra, the appellant herein substantially drifted across the marked lines within a short distance and had the potential of causing a more serious collision with other vehicles on the road. Moreover, this court will not accept appellants premise that distance alone is not enough to justify a reasonable suspicion. This is particularly true where the accused has weaved considerably over two lanes of travel in an area of heavy traffic. Nor will this court hold that there was insufficient time in which to form a reasonable suspicion. Appellant's contention that Deputy Constantino could have only observed appellant for nine seconds before effectuating the stop is of no avail to appellant. In nine seconds appellant could have caused a serious accident and possibly killed someone.
Deputy Constantino could stop and question appellant if there were reasonable grounds to believe that appellant was engaged in criminal conduct. See Cortez, supra at 417. Deputy Constantino legally stopped appellant based on his observation of appellant committing a marked lane violation.
Appellant's assignments of error are without merit.
For the foregoing reasons, the decision of the trial court is affirmed.
Cox, P.J., concurs.
Donofrio, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE