The STATE of Ohio, Appellee,

v.

STAMPER, Appellant.

[Cite as *State v. Stamper* (1995), 102 Ohio App.3d 431.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

Nos. 94–A–0013, 94–A–0044.

Decided April 10, 1995.

*Gregory J. Brown,* Ashtabula County Prosecuting Attorney, and *Virginia K. Miller,* Assistant Prosecuting Attorney, for appellee.

*Kenneth L. Piper,* for appellant.

CHRISTLEY, Presiding Judge.

This action entails two appeals from separate final judgments of the Ashtabula County Court. Under the first appeal, App. No. 94–A–0013, appellant, Harrison A. Stamper, seeks the reversal of his conviction for driving a motor vehicle while having a breath-alcohol concentration of .237 grams per two hundred ten liters of breath, in violation of R.C. 4511.19(A)(3). Under the second, 94–A–0044, he seeks the reversal of his conviction for driving while under a suspension, in violation of R.C. 4507.02(D).

On the evening of March 10, 1993, at approximately 9:30 p.m., appellant was operating his pickup truck on State Route 84 in Ashtabula County. Since it had been snowing, the road was covered with a small amount of snow. As a result, the road was somewhat slippery.

As appellant was travelling east, he was passed by a state highway patrol car travelling in the opposite direction. As the two vehicles were passing, the officer in the patrol car saw appellant's truck momentarily go off the right side of the road. Accordingly, the officer turned his vehicle around and began to follow appellant.

Before the officer could overtake the pickup truck, appellant turned onto Centennial Road. When the officer arrived at the intersection of Centennial and State Route 84, he could see from the tracks in the snow that a vehicle had fishtailed while turning from State Route 84 onto Centennial. Since a second vehicle had been following appellant when he made the turn, the officer was not certain whether appellant's truck had made the fishtail tracks. However, due to

the nature of the tracks, the officer thought that the tracks had probably been made by the truck.

The officer eventually was able to overtake appellant at the intersection of Centennial and Eastwood Road. After stopping at the intersection, appellant again began to travel north on Centennial. As appellant was starting to drive through the intersection, the officer saw the back of the pickup truck fishtail. From his perspective behind appellant, the officer thought that appellant had accelerated too quickly for the snowy conditions.

The officer continued to follow appellant north on Centennial. Since the other vehicle following appellant had turned at the previous intersection, the officer was able to travel directly behind appellant's truck. Although the road in question did not have any traffic lines, the officer could see that appellant's truck was not travelling completely on the right side of the road, i.e., the officer could see that appellant was consistently driving left of center.

Appellant stopped his truck at a red light located at the intersection of Centennial and State Route 20. As appellant began to drive through this intersection, the officer again saw the back of the truck fishtail. Accordingly, as appellant was turning into a parking lot located near the intersection, the officer activated his pursuit lights and initiated an investigative stop.

Upon having appellant exit the truck, the officer asked him to perform two field sobriety tests. As appellant was attempting to perform the second test, he stated to the officer that it was not necessary to do the tests because he was "drunk." As a result, the officer placed appellant under arrest and drove him to the local patrol post, where a breath test was administered. The results of this test indicated that the level of alcohol concentration in appellant's breath was .237 grams per two hundred ten liters.

Based upon the foregoing incident, appellant received four citations: (1) driving while under the influence of alcohol, under R.C. 4511.19(A)(1); (2) driving while having a breath-alcohol concentration of greater than .10 grams per two hundred ten liters, pursuant to R.C. 4511.19(A)(3); (3) driving while under a suspension, pursuant to 4507.02(D); and (4) driving left of center, under R.C. 4511.25. At his initial appearance, appellant entered a plea of not guilty to all four charges.

Appellant's pretrial conference was set for April 8, 1993. Six days prior to this conference, appellant's counsel filed a notice with the trial court indicating that on April 2, he had served the state with a request for discovery. Following the conference on April 8, the trial court issued a judgment which merely stated that the parties were required to provide discovery to each other. The trial date was initially set for May 26, 1993.

On April 14, 1993, appellant moved for leave to file a motion to suppress certain evidence on or before May 11. As the basis for this request, appellant asserted that the state had failed to provide discovery in a timely manner. The trial court granted the motion for leave, and the purpose of the May 26 proceeding was altered from a trial on the merits to an evidentiary hearing on the proposed motion to suppress.

On May 11, appellant filed his motion to suppress the results of the breath test and the oral statement he had made to the arresting officer. As one basis for this motion, he argued that the initial stop of his truck had been illegal because the officer had not had a reasonable suspicion that he had violated any traffic laws. As part of the motion, he further maintained that the breath test had not been administered in compliance with the applicable state regulations.

The evidentiary hearing was held as scheduled on May 26, 1993. As a part of this proceeding, both appellant and the arresting officer gave testimony as to what had allegedly occurred prior to the stop of the truck. Based in part upon this testimony, the trial court rendered a judgment denying the motion to suppress in its entirety. This judgment was issued on October 12, 1993.

As to the propriety of the investigative stop, the trial court concluded in the judgment that the fact that the officer had seen appellant driving left of center was sufficient, in and of itself, to justify the stop. The court further held that the facts of the case had supported a reasonable and articulable suspicion that appellant had been driving while under the influence. In support of this holding, the court cited the officer's testimony as to the fishtailing and the fact that appellant's truck had gone off the road momentarily.

Once the suppression judgment had been rendered, appellant's trial was reset for November 30, 1993. One day prior to the new trial date, appellant moved the trial court to dismiss the charges on the ground that the state had failed to bring him to trial within the statutory time limits. Specifically, he argued that the twenty-seven-day period between the filing of the motion for leave and the filing of the motion to suppress should be charged to the state because the delay could be attributed to the failure of the state to provide discovery in a timely manner.

After the state had filed a response and a hearing had been held on the matter, the trial court issued a judgment denying the motion to dismiss. In relation to the twenty-seven days between the motion for leave and the motion to suppress, the court held that these days were not chargeable to the state because appellant had not made his request for discovery until twenty-two days after his initial appearance.

The judgment on the motion to dismiss was rendered on January 14, 1994. The date for the trial was then rescheduled for February 2. On the latter date,

appellant filed a second motion to dismiss the charges, arguing that the time limit for his trial had expired during the period between January 14 and February 2. Once a hearing had been held on the matter, the trial court again rendered a judgment denying the motion.

At the conclusion of the hearing on the second motion to dismiss, appellant indicated to the trial court that he wanted to change his plea to one of no contest as to the four charges. Upon accepting the plea, the court found appellant guilty on the charges of driving while under a suspension and driving while having a breath-alcohol concentration higher than .10 grams per two hundred ten liters. As to the former charge, the court sentenced appellant to ninety days in jail and fined him $500. As to the latter charge, the court sentenced appellant to one year in jail, fined him $1,000, and suspended his license to drive for a period of ten years. In relation to the remaining two charges, the court did not make any finding as to guilt.

In appealing the two convictions, appellant has assigned the following as error:

"1. The trial court erred in its journal entry of October 12, 1993, in finding that the trooper had a reasonable and articulable suspicion to believe the defendant was violating the law and justifying a stop of defendant's vehicle.

"2. The trial court erred twice in denying defendant's motion to dismiss for violation of defendant's speedy trial right."

█ Under his first assignment, appellant challenges the trial court's determination that the initial stop of his vehicle had been supported by a reasonable and articulable suspicion of criminal behavior. In relation to this point, appellant's argument has two aspects. First, he contends that the fishtailing and the driving left of center did not satisfy the standard for an investigative stop because these actions occurred as a direct result of the road conditions. Second, he asserts that momentarily driving off the edge of the road was insufficient, in and of itself, to justify the stop.

The standard for judging the constitutional validity of an investigative stop is well established under both federal and state case law. In *State v. Zampini* (1992), 79 Ohio App.3d 608, 610, 607 N.E.2d 933, 935, the court summarized this precedent in the following manner:

"In order to justify an investigative stop, a police officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906, 44 O.O.2d 383, 393. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414

N.E.2d 1044. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that the person stopped was violating or about to violate the law. *Terry,* supra."

In applying the basic *Terry* standard, we have held that a finding of a reasonable suspicion cannot be predicated solely upon actions which are consistent with innocent behavior. *State v. Bird* (1988), 49 Ohio App.3d 156, 551 N.E.2d 622. However, in applying *Bird* in subsequent cases, we have likewise held that a reasonable suspicion can be based upon actions which could be interpreted to be innocent or criminal:

"We do not advocate a test which would turn on whether the defendant's acts can be construed as 'innocent through the exercise of exegetical speculation.' [*United States v. Black* (C.A.7, 1982), 675 F.2d 129, 137.] 'It must be rare indeed that a [*sic*] officer observes behavior consistent only with guilt and incapable of innocent interpretation.' *United States v. Price* (C.A.2, 1979), 599 F.2d 494, 502. Rather, our previous pronouncements stand for the proposition that acts wholly consistent with innocent behavior are insufficient, standing alone, to provide an articulable basis for reasonable suspicion; and that *reasonable* suspicion must be based upon additionally articulated acts of *criminal* activity sufficient to support the requisite 'minimal level of objective justification.' *United States v. Sokolow* (1989), 490 U.S. 1, 7 [109 S.Ct. 1581, 1585, 104 L.Ed.2d 1]." (Emphasis *sic.*) *Mentor v. Deniham* (Dec. 31, 1991), Lake App. No. 91–L–050, unreported, at 6–7, 1991 WL 280004.

In relation to the fishtailing and the driving left of center, this court agrees that in some instances these actions could be attributed to hazardous road conditions, instead of the influence of alcohol. The same could also be said of appellant's action in allowing his vehicle to drift off the side of the road momentarily.

However, as part of his testimony at the suppression hearing, the arresting officer was able to articulate reasons why he believed appellant's actions were attributable to erratic driving. As to the fishtailing, the officer testified that the instances he saw firsthand appeared to be caused by the fact that appellant was accelerating too quickly from a stop. As to the driving left of center, the officer stated that even though Centennial Road was covered with snow, the boundaries or edges of the road were easily discernible. He further testified that in following appellant, he did not experience any difficulties in driving on the right side of the road.

We note, parenthetically, that driving at a speed and in a manner that takes existing road conditions into account is the responsibility of every driver under Ohio law.[1] Thus, observing a driver who commits a series of individually

---

1. See, for example, R.C. 4511.34, assured clear distance, and R.C. 4511.21, speed.

minor traffic infractions or irregularities, potentially explainable by weather conditions, could lead the observer to reasonably conclude that the driver was either oblivious to the weather conditions or that the driver was incapable of adjusting to them. Either conclusion would supply a reasonable belief for a stop.

The Supreme Court of Ohio has expressly held that in reviewing a determination as to the reasonableness of a stop, an appellate court must give deference to the officer's training and experience. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Given this standard of review, we cannot say that the trial court abused its discretion in finding the officer's explanation to be more credible than that of appellant.

In relation to the fact that appellant drove off the right side of the road when the officer first saw his vehicle, appellant contends that this fact alone was insufficient to justify the stop. In support of this argument, appellant cites *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176, in which the Fourth District Court of Appeals held that in the absence of any other evidence indicating that the driver was impaired, the crossing of an edge line on one occasion was not sufficient to justify a stop based upon a suspicion of drunk driving.

In interpreting *Gullett*, this court has succinctly stated that the holding in that case simply is not controlling when there are other instances of erratic driving. *State v. Burwell* (June 30, 1994), Lake App. No. 93–L–122, unreported, 1994 WL 321163. That is clearly the case in the instant appeal. Again, in addition to seeing the vehicle drift off the road one time, the arresting officer also saw appellant's vehicle fishtailing and driving left of center.

In support of his position, appellant also cites the recent decision of the Seventh District Court of Appeals in *State v. Drogi* (1994), 96 Ohio App.3d 466, 645 N.E.2d 153. In *Drogi*, the arresting officer initiated the investigative stop after observing appellant's vehicle cross over the center line by one foot, weave within the lane twice, and then cross over the right edge line by a slight amount. Concluding that the motion to suppress should have been granted, the appellate court emphasized that such minor weaving did not constitute erratic driving upon which a valid stop could be based.

Without commenting upon the merits of the holding in *Drogi*, we would again note that the facts of this case are readily distinguishable from those in *Drogi*, in that the investigative stop was predicated upon more than just the one instance in which appellant's vehicle drifted off the right side of the road.

Taken as a whole, the facts of this case support the legal conclusion that the officer had a reasonable and articulable basis for suspecting that appellant was driving while under the influence. Moreover, as the trial court noted, the

stop could have been based solely upon the driving left of center, as this constituted a separate violation of a traffic law. See *State v. Gwin* (Dec. 16, 1994), Portage App. No. 94–P–0013, unreported, 1994 WL 721616; *State v. Takacs* (Feb. 25, 1994), Lake App. No. 93–L–087, unreported, 1994 WL 102221. Thus, since the trial court did not err in denying appellant's motion to suppress, his first assignment lacks merit.

Under his second assignment, appellant contests the denial of both of his motions to dismiss for lack of a speedy trial. In support of his basic contention that the pending charges should have been dismissed, appellant has advanced three separate arguments for consideration. First, he submits that the trial court erred in holding that twenty-seven days between the filing of the motion for leave and the filing of the motion to suppress should not be charged to the state.

R.C. 4511.99(A) provides that a violation of either R.C. 4511.19(A)(1) or (A)(3) constitutes a misdemeanor of the first degree. Thus, pursuant to R.C. 2945.71(B)(2), the state was required to bring appellant to trial within ninety days following his arrest on March 10, 1993.

The following is a synopsis of the various events relevant to our analysis of the speedy trial issue:

March 11, 1993—Appellant makes an initial appearance on the four charges. A pretrial conference is set for April 8, 1993.

April 2, 1993—Appellant moves for leave to file a motion to suppress on or before May 11, 1993. On the same date, the trial court issues judgment granting the motion for leave.

April 8, 1993—A pretrial conference is held. The trial court issues judgment ordering the parties to provide discovery.

May 11, 1993—Appellant files his motion to suppress the results of the breath test and the oral statement he made to the arresting officer.

May 26, 1993—An evidentiary hearing is held on the motion to suppress.

October 12, 1993—The trial court issues judgment denying the motion to suppress. The trial is subsequently reset for November 30, 1993.

November 29, 1993—Appellant files his first motion to dismiss for lack of speedy trial.

January 14, 1993—The trial court issues judgment denying the first motion to dismiss. The trial is subsequently reset for February 2, 1994.

February 2, 1994—Appellant files his second motion to dismiss for lack of speedy trial.

March 2, 1994—A hearing is held on the second motion to dismiss. Upon denying the second motion, the trial court accepts appellant's plea of no contest and finds him guilty of driving while having a breath-alcohol concentration of greater than .10 grams per two hundred ten liters and driving left of center. The trial court issues judgments sentencing appellant on these two charges.

March 3, 1994—The trial court issues judgment denying the second motion to dismiss.

Appellant's first motion to dismiss was filed on November 29, 1993, some 263 days after appellant's arrest. This entire period of time comprised the following blocks of time: (1) thirty-four days between the arrest and the filing of appellant's motion for leave, (2) twenty-seven days between the filing of the motion for leave and the filing of the motion to suppress, (3) one hundred fifty-four days between the filing of the motion to suppress and the issuance of the trial court's judgment on the motion to suppress, and (4) forty-eight days between the issuance of the judgment and the filing of the first motion to dismiss.

[5] In arguing that he was denied his statutory right to a speedy trial, appellant contends that three of those blocks of time were chargeable to the state.[2] Specifically, he argues first that the twenty-seven days between the filings of the motion for leave and the motion to suppress should be charged to the state because the delay caused by the motion for leave was caused by the failure of the state to provide discovery in a timely manner.

In rejecting the foregoing argument, the trial court held that the record before it supported the conclusion that the delay in the beginning of the discovery process, which in turn caused the delay in the filing of the motion to suppress, was directly attributable to appellant. Upon independently reviewing the record, this court finds the trial court's analysis to be persuasive.

Pursuant to Crim.R. 12(C), a motion to suppress must be filed within thirty-five days after the defendant has been arraigned on the charges. *Akron v. Milewski* (1985), 21 Ohio App.3d 140, 21 OBR 149, 487 N.E.2d 582. In the instant case, appellant's request for discovery was not served on the state until twenty-two days after he had been arraigned at his initial appearance. Thus, assuming for the sake of argument that the motion to suppress could be written in one day, appellant gave the state ten fewer days to provide discovery than it had taken him to serve his request, *i.e.*, appellant gave the state only twelve days in which to respond.

---

2. Appellant does not, as part of this issue, make any argument as to the one-hundred-fifty-four-day interval, reserving that as an additional issue under this assignment.

Although the Ohio Rules of Criminal Procedure do not delineate any specific time limit for responding to a discovery request, logic dictates that the time needed to provide a proper response would be greater than the time needed to serve the actual request. As to this point, the court notes, as did the trial court, that Crim.R. 16(F) provides that a *motion* for discovery must be filed within twenty-one days after arraignment. Since a motion for discovery is not proper until after the state has failed to respond to the request for discovery, it follows that the defendant is expected under the rules to serve the request within a few days after arraignment.

R.C. 2945.72(A) states that the running of the statutory time for bringing a defendant to trial is tolled for any period of delay made necessary by a motion filed by the defendant. The record in this case supports the conclusion that the fact that appellant needed extra time to file his motion to suppress was not caused by any dilatory action on the part of the state, but instead was caused by appellant's own inaction in waiting twenty-two days to serve the request for discovery. Thus, the trial court did not err in holding that the delay caused by the motion for leave was attributable to appellant.

As was noted above, the evidentiary hearing on appellant's motion to dismiss was held on May 26, 1993. However, it was not until one hundred thirty-nine days later that the trial court rendered its judgment on the motion. Under the second aspect of this assignment, appellant maintains that he was denied his right to a speedy trial on constitutional grounds because the length of the time it took the court to rule on his motion was inherently unreasonable.

As a result of our disposition of the third issue raised in this assignment, we decline to address the merits of appellant's argument, pursuant to App.R. 12(A)(1)(c).

▮ Appellant also asserts that another reason existed for dismissing the charges against him. In its judgment entry denying the first motion to dismiss, the trial court specifically stated that under its analysis, the state still had seven days in which to try appellant. Despite this, after the court had denied the first motion on January 14, 1994, appellant's trial was rescheduled for February 2. Based upon this, appellant submits that he was denied his right to a speedy trial because the trial court failed to journalize an entry continuing the trial before the ninety-day period had run.

As appellant aptly notes, this court has consistently held that the *running* of the statutory time period can be tolled on the basis of a *sua sponte* continuance only when the trial court journalized an entry explaining the reasons for the delay. See, *e.g., State v. Knittel* (Feb. 21, 1992), Ashtabula App. No. 91–A–1599, unreported, 1992 WL 191980. There is some authority indicating that an

explanation of the reasons for the *sua sponte* continuance is not needed when the reason is obvious from the record. See *State v. Terra* (1991), 74 Ohio App.3d 189, 598 N.E.2d 753. However, these cases still indicate that a journal entry must be made *before* the time will be tolled.

In this case, the record indicates that after the new trial date was set outside the ninety-day limit, the trial court never issued an entry of continuance. Appellant was entitled to a dismissal on this basis. Thus, the trial court erred in denying his second motion to dismiss. Under this analysis, his second assignment of error has merit.

It is highly regrettable that someone such as the appellant should benefit by our observance of what many would consider a technicality. However, the concept of due process as embodied in the constitutional right to a speedy trial is found in both the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. It was even set forth in R.C. 2945.71 by our legislature as recently as 1981.

The writers of the Constitution and our legislators obviously did not think the concept of a speedy trial was an insignificant technicality, and neither do we on this court. Thus, in such a situation as we now face, our concern must be with the preservation of the integrity of the legal process.

Based upon the foregoing the judgment of the trial court is reversed, and this court enters judgment for appellant.

*Judgment reversed.*

JOSEPH E. MAHONEY and NADER, JJ., concur.