OPINION
This is an accelerated calendar appeal taken from a final judgment of the Chardon Municipal Court. Appellant, Robert E. Gray, II, appeals his conviction and sentence for driving under the influence in violation of R.C. 4511.19(A)(1). For the following reasons, we reverse the judgment of the trial court and enter judgment for appellant
The following facts are relevant to this appeal. On June 6, 1999, Officer Robert M. Rank ("Officer Rank") of the Bainbridge Township Police Department was on routine patrol during the early morning hours. While travelling northbound on State Route 306 at approximately 1:20 a.m., Officer Rank observed the tail-lights of a vehicle disappear behind the Amoco gas station located at the intersection of State Route 306 and Bainbridge-Auburn Road. The gas station was closed for the night.
As Officer Rank immediately entered the premises to investigate, the vehicle traveled around the back of the building to the exit leading to the Bainbridge-Auburn Road. Officer Rank testified that the vehicle did not stop behind the gas station, and that he did not witness any traffic violations. Nevertheless, the officer activated his overhead lights to detain the vehicle so he could "find out what [the driver] was doing behind the business." He stopped the vehicle just before it reentered the intersection.
Upon approaching the stopped vehicle, Officer Rank found appellant sitting behind the wheel of the car. After a subsequent investigation, Officer Rank placed appellant under arrest for suspicion of driving under the influence.[1] Appellant was transported to the Bainbridge Township Police Department where he refused to submit to a breath test. Appellant was ultimately issued a citation for driving under the influence of alcohol.
Appellant initially pled not guilty to the charge. On June 22, 1999, appellant filed a motion to suppress with the trial court. A hearing on the motion was held July 27, 1999. At the beginning of the hearing, appellant indicated to the trial court on the record that he was only contesting the initial stop. Officer Rank was the only person to testify at the hearing.
At the conclusion of the suppression hearing, the trial court denied the motion. Appellant subsequently pled no contest to the charge of driving under the influence. The trial court proceeded to find appellant guilty and sentenced him accordingly. Appellant perfected a timely appeal of his conviction and sentence based on the trial court's denial of his motion to suppress. He now asserts the following assignment of error:
 "The trial court erred as a matter of law in overruling the motion to suppress on the basis that the arresting officer had no articulable facts and reasonable suspicion to justify the stop, in violation of the Ohio and United States Constitutions."
In his sole assignment of error, appellant argues that the trial court erred by denying his motion to suppress because Officer Rank did not have a reasonable, articulable suspicion of criminal activity upon which to initiate the traffic stop. According to appellant, the act of turning around at a corner gas station, regardless of the time of day, is consistent with innocent behavior and cannot be, without more, the justification for an investigative stop. We agree.
At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills
(1992), 62 Ohio St.3d 357, 366. See, also, State v. Carleton
(Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 5, 1998 Ohio App. LEXIS 6163; State v. Lillstrung (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 2, 1998 WL 682400; State v.Koziol (Aug. 29, 1997), Lake App. No. 96-L-193, unreported, at 13, 1997 Ohio App. LEXIS 3877.
On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586,592; Carleton at 6; Lillstrung at 2; Koziol at 13. After accepting such factual findings as true, the reviewing court must then independently determine as a matter of law whether or not the applicable legal standard has been met. Retherford at 592;Carleton at 6; Lillstrung at 2; Koziol at 13.
The standard for judging the constitutional validity of an investigative stop is well established under both federal and state law. State v. Stamper (1995), 102 Ohio App.3d 431, 436. The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." See, also, Section 14, Article I of the Ohio Constitution ("The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated[.]").
The Fourth Amendment is only applicable in situations where an actual "search" or "seizure" has occurred. Here, there is no question that the protections of the Fourth Amendment apply because appellant was the subject of a traffic stop. A stop of a motorist in transit constitutes a seizure for Fourth Amendment purposes. Carleton at 7, citing State v. Durfee (Mar. 6, 1998), Lake App. Nos. 96-L-198 and 96-L-199, unreported, at 5, 1998 Ohio App. LEXIS 865. See, also, State v. Eskridge (Mar. 31, 2000), Portage App. No. 98-P-0130, unreported, at 8, 2000 Ohio App. LEXIS 1439.
Despite the protections afforded by the United States and Ohio Constitutions, certain exceptions are recognized. For example, pursuant to Terry v. Ohio (1968), 392 U.S. 1, a police officer may, under limited circumstances, detain an individual and conduct a brief investigative stop. In order for an investigative stop to fall within constitutional parameters, the police officer must be able to cite articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity. Terry at 21. See, also, Carleton at 7; Lillstrung at 3. However, absent any basis for suspecting an individual is acting in a criminal manner, the balance between the public interest in crime prevention and the individual's right to privacy tilts in favor of freedom from public interference. State v. Bucci (Dec. 23, 1999), Ashtabula App. No. 98-A-0050, unreported, at 3, 1999 WL 1313671, citingBrown v. Texas (1979), 443 U.S. 47, 52.
In the context of a traffic stop, the police officer must have a reasonable and articulable suspicion that the motorist was operating the vehicle in violation of the law. Delaware v. Prouse
(1979), 440 U.S. 648. See, also, State v. Pringle (1998),128 Ohio App.3d 740, 741; Warren v. Cecil (Sept. 30, 1999), Trumbull App. No. 98-T-0152, unreported, at 2, 1999 WL 959841; Carleton at 7-8; Lillstrung at 3. Stopping a vehicle based on the reasonable suspicion that a traffic offense has occurred is not improper "even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. See, also, State v. Schofield (Dec. 10, 1999), Portage App. No. 98-P-0099, unreported, at 3, 1999 WL 1297605; Carleton
at 12.
In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Shacklock (Apr. 30, 1999), Trumbull App. Nos. 98-T-0005 and 98-T-0083, unreported, at 4, 1999 Ohio App. LEXIS 2020, quoting State v. Andrews (1991), 57 Ohio St.3d 86,87-88. See, also, State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus; State v. Jennings (Mar. 3, 2000), Trumbull App. No. 98-T-0196, unreported, at 3, 2000 WL 263741;Lillstrung at 3. The court reviewing the officer's actions must give due weight to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement. Andrews at 88, citing United States v. Cortez (1981),449 U.S. 411, fn. 2. See, also, Stamper at 438.
Upon reviewing the totality of the circumstances in the instant matter, we disagree with the trial court's conclusion that Officer Rank was justified in making the investigative stop of appellant.[2] During the suppression hearing, Officer Rank candidly admitted that appellant was not driving in a reckless or erratic manner. In fact, Officer Rank testified that he did not observe appellant break any traffic law. Instead, the officer stopped appellant solely because he had driven behind a closed business late at night.
This court has held on numerous occasions that a finding of reasonable suspicion cannot be predicated upon actions which are wholly consistent with innocent behavior. State v. Bird (1988),49 Ohio App.3d 156, 157; Mentor v. Denihan (Dec. 31, 1991), Lake App. No. 91-L-050, unreported, at 2, 1991 WL 280004; Bucci at 4.Stamper at 437. See, also, State v. Brown (1996), 166 Ohio App.3d 477, [116 Ohio App.3d 477] 480-481; State v. Rhude
(1993), 91 Ohio App.3d 623, 626; State v. Klein
(1991), 73 Ohio App.3d 486, 489. However, reasonable suspicion can be based upon actions which could be interpreted to be either innocent or criminal in nature. Stamper
at 437, quoting Denihan at 6-7.
Through the years, the Supreme Court of Ohio has found several factors to be relevant when determining whether an officer possessed reasonable suspicion to initiate a traffic stop. Some of those factors include: (1) whether the location of the stop was in a high crime area; (2) whether the officer was aware of recent criminal activity in the area; (3) the time of the stop; (4) whether the defendant's conduct was suspicious; and (5) the officer's training and experience. See, generally, State v.Freeman (1980), 64 Ohio St.2d 291, 295; Andrews at 88; Bobo at 179.
Here, Officer Rank had been employed with the Bainbridge Township Police Department for seven years. His responsibilities included routine patrol, building security, and enforcement of traffic laws. Nevertheless, on the night in question, he observed no criminal conduct on the part of appellant. Moreover, Officer Rank testified that the area in which the stop occurred was not a high-crime area, nor had there been any recent break-ins in the neighborhood. Although the hour was late, the gas station in question was located at the intersection of two roads. The fact that a motorist pulled onto a gas station's lot and drove behind the business toward another road is insufficient to constitute reasonable suspicion, especially when the observed vehicle does not slow down or stop behind the building.
Appellee submits that the cases cited by appellant in which motions to suppress were granted are distinguishable from the case at bar. In particular, appellee maintains that appellant assumed the risk of being briefly detained by a law enforcement officer because he had pulled onto private property, as opposed to travelling on a public highway, after the business was closed for the night. According to appellee, there is no implied or expressed invitation to enter upon a business' premises after the business is closed.
Appellee's argument is wholly without merit. Nothing in search and seizure jurisprudence suggests that a person's rights are suspended once he or she enters upon private property. Moreover, the very nature of a gas station is to provide a place for public use. While the gas station may have been closed at the time appellant was stopped, that fact, standing alone, does not obviate the public's access to the business. There was no testimony of any posted prohibitions regarding a limited right of access at night.
There are numerous legitimate reasons why a person may travel through a business' parking lot after hours. While such an event may become one factor which can be considered in determining the existence of a reasonable suspicion, it is not, by itself, a factor that can be reasonably construed as criminal in nature.
At best, Officer Rank had an inarticulate hunch rather than a reasonable suspicion that appellant was engaged in criminal activity based upon his observations prior to the stop. We certainly agree that the Fourth Amendment does not require an officer, who lacks the precise level of information necessary for reasonable suspicion to stop a motorist, to ignore potential criminal conduct. The officer in the case at bar, however, could have simply followed appellant without stopping him. This was especially true when the officer's initial concern did not focus on the potential of an impaired driver. Instead his focus was on the potential for criminal activity directly involving the gas station.
Based on the foregoing reasons, appellant's assignment of error has merit. The judgment of the trial court is reversed and judgment is entered for appellant.
 ______________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] Appellant's argument on appeal centers around the reasonableness of the stop. Therefore, it is unnecessary to set forth the factual basis for appellant's eventual arrest.
[2] As an aside, we agree with the comments of the trial court to the effect that the officer's decision to investigate was "good police work." Clearly he was right to follow appellant's car. It is his premature stop of appellant with which we take issue.