OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, the State of Ohio, appeals from a final judgment of an acting judge in the Ashtabula County Court, Eastern Division, granting appellee's motion to suppress. For the reasons that follow, we reverse the judgment of the acting judge and remand the matter for further proceedings consistent with this opinion.
At approximately 1:30 a.m. on the morning of Saturday, August 7, 1999, Officer Robert Ginn ("Officer Ginn") of the Andover Village Police Department was on routine patrol traveling westbound on East Main Street in Andover, Ohio when he observed an eastbound pick-up truck driven by appellee, John Victor Teter, approaching. As the two vehicles converged, Officer Ginn noticed that both of appellee's passenger side tires were completely over the white line on the far right side of the street. Accordingly, he turned around in a nearby parking lot and proceeded to follow appellee for an undetermined distance. Once he caught up with the truck, the officer once again noticed that both of the vehicle's passenger side tires were completely over the white line. At that point, Officer Ginn decided to activate his overhead lights and initiate a traffic stop.
Officer Ginn approached the driver's side window and informed appellee of the reason for the stop. Detecting an odor of alcohol on appellee's breath, Officer Ginn asked him how much he had to drink that evening. Appellee stated that he had consumed "one or two, or two or three" drinks.
Officer Ginn requested that appellee exit the vehicle. The officer then proceeded to administer a standard battery of field sobriety tests. After appellee performed poorly on the one-legged stand, Officer Ginn determined that appellee was under the influence of alcohol and placed him under arrest. Appellee was transported to the Andover Village Police Department where he was asked to submit to a breath test. The test indicated that he had a concentration of alcohol of .130 percent of a gram per 210 liters of breath. Appellee was subsequently issued traffic citations for driving under the influence of alcohol in violation of R.C.4511.19(A)(1), driving with a prohibited breath-alcohol concentration in violation of R.C. 4511.19(A)(3), and failure to drive within marked lanes in violation of R.C. 4511.33.
On August 30, 1999, appellee filed a motion to suppress the evidence obtained against him. As grounds for the motion, appellee argued that Officer Ginn initiated the traffic stop without sufficient probable cause. The motion came on for a hearing before an acting judge on September 27, 1999. Officer Ginn was the only person to testify. In an abbreviated judgment entry filed on November 12, 1999, the acting judge granted appellee's motion to suppress.
From this judgment entry, appellant filed a timely notice of appeal with this court pursuant to Crim.R. 12(J). It now asserts the following assignment of error for our review:
 "The trial court erred in granting defendant-appellee's motion to suppress by ruling that there was insufficient facts presented at the hearing to give the officer a reasonable and articulable suspicion that the Defendant was subject to a seizure."
 At a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366. See, also, State v. Gray
(July 14, 2000), Geauga App. No. 99-G-2249, unreported, at 4, 2000 Ohio App. LEXIS 3197; State v. Hrubik (June 30, 2000), Ashtabula App. No. 99-A-0024, unreported, at 4, 2000 Ohio App. LEXIS 2999; State v. Robinson (June 30, 2000), Portage App. No. 99-P-0019, unreported, at 4, 2000 Ohio App. LEXIS 2999.
On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence.State v. Retherford (1994), 93 Ohio App.3d 586, 592; Gray at 4-5; Hrubik
at 5; Robinson at 4. After accepting such factual findings as true, the reviewing court must then independently determine as a matter of law whether or not the applicable legal standard has been met. Retherford at 592; Gray at 5; Hrubik at 5; Robinson at 4-5.
Appellant argues that there was sufficient evidence presented at the hearing to support Officer Ginn's decision to stop appellee. According to appellant, the fact that appellee drove across the white line on the edge of the road provided the arresting officer with at a least a reasonable and articulable suspicion that appellee was committing a traffic violation.
The standard for judging the constitutional validity of an investigative stop is well established under both federal and state law.State v. Stamper (1995), 102 Ohio App.3d 431, 436. The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." See, also, Section 14, Article I of the Ohio Constitution ("The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated[.]").
The Fourth Amendment, however, is only applicable in situations where an actual "search" or "seizure" has occurred. In this case, appellee was the subject of the traffic stop, and as a result, protected byFourth Amendment because a stop of a motorist in transit constitutes a seizure for Fourth Amendment purposes. Gray at 5-6; Hrubik at 6-7.
Despite the protections afforded by the United States and Ohio Constitutions, certain exception are recognized. For example, pursuant to Terry v. Ohio (1968), 392 U.S. 1, 20, a police officer may, under limited circumstances, detain an individual for purposes of conducting an investigative stop. In order for the investigative stop to fall within constitutional parameters, the police officer must be able to cite to articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity. Id. at 21. See, also, Gray at 6; Hrubik at 6-7. However, absent any basis for suspecting that an individual is acting in a criminal manner, the balance between the public interest in crime prevention and the individual's right to privacy tilts in favor of freedom from public interference. State v. Bucci (Dec. 23, 1999), Ashtabula App. No. 98-A-0050, unreported, 1999 Ohio App. LEXIS 6228, citing Brown v. Texas (1979), 443 U.S. 47, 52.
In the context of a traffic stop, the police officer must have a reasonable and articulable suspicion that the motorist was operating the vehicle in violation of the law. Delaware v. Prouse (1979), 440 U.S. 648. See, also, State v. Pringle (1998), 128 Ohio App.3d 740, 741; Gray at 7. Stopping a vehicle based on a reasonable suspicion that a traffic offense has occurred is not improper "even if the officer had some ulterior motive for making the stop, such as suspicion that the violator was engaging in more nefarious criminal activity." Dayton v. Erickson
(1996), 76 Ohio St.3d 3, syllabus. See, also, State v. Schofield (Dec. 10, 1999), Portage App. No. 98-P-0099, unreported, 1999 Ohio App. LEXIS 5945; Gray at 7-8.
When evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "`viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as the unfold.'" State v.Shacklock (Apr. 30, 1999), Trumbull App. Nos. 98-T-0005 and 98-T-0083, unreported, at 4, 1999 Ohio App. LEXIS 2020, quoting State v. Andrews
(1991), 57 Ohio St.3d 87-88. See, also, State v. Bobo (1988),37 Ohio St.3d 177, paragraph one of the syllabus; Gray at 8; Hrubik at 7. The court reviewing the officer's actions must give due deference to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement. Andrews at 88, citing UnitedStates v. Cortez (1981), 449 U.S. 411, fn. 2. See, also, Stamper at 438.
Upon reviewing the totality of circumstances in the instant matter, we disagree with the acting judge's conclusion that Officer Ginn was not justified in initiating the investigative stop of appellee. It is apparent from the record that the officer had more than a reasonable suspicion to stop appellee's truck. In fact, Officer Ginn had probable cause to affect the stop based on a traffic code violation.
This court has held on numerous occasions that an officer's observation of any violation of a traffic ordinance constitutes sufficient grounds to stop the vehicle observed violating such ordinance. State v. Brownlie
(Mar. 31, 2000), Portage App. Nos. 99-P-0005 and 99-P-0006, unreported, at 6, 2000 Ohio App. LEXIS 1450. For example, in State v. Yemma (Aug. 9, 1996), Portage App. No. 95-P-0156, unreported, at 6-8, 1996 Ohio App. LEXIS 3361, we noted that:
 "This court has repeatedly held that a minor violation of a traffic regulation * * * that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation. * * *
 "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." (Citations and footnote omitted.)
 Accordingly, we hold that when a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation. Upon stopping the vehicle, however, the officer may perceive facts indicating that the driver is intoxicated. If the officer has developed a reasonable suspicion that the driver is intoxicated, he or she may ask the driver to step out of the vehicle and perform field sobriety tests. Depending on the outcome of those tests, the officer may ultimately obtain probable cause to arrest the motorist for driving under the influence of alcohol. Brownlie at 6; State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported, at 10, 1998 Ohio App. LEXIS 6163; State v. Lillstrung (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 9-10, 1998 Ohio App. LEXIS 4374; State v. Parkison (Apr. 11, 1997), Lake App. Nos. 96-L-101 and 96-L-120, unreported, at 7-8, 1997 Ohio App. LEXIS 1468; State v. Brummett (Mar. 28, 1997), Lake App. No. 95-L-163, unreported, at 5-6, 1997 Ohio App. LEXIS 1219; Yemma
at 8.
At the suppression hearing, Officer Ginn testified that he pulled appellee over because he had witnessed a traffic offense: i.e., driving outside of marked lanes. By crossing over the right edge line at least two times within a relatively short distance in violation of R.C. 4511.33, appellee provided the officer with probable cause to subject him to constitutional seizure via the roadside stop. As a result, we conclude that Officer Ginn did possess probable cause to initiate the investigative stop. Thus, the acting judge should have denied appellee's motion to suppress. The fact that the motorist may have a reasonable explanation ultimately has no bearing on the constitutionality of the initial stop.
Based on the foregoing analysis, appellant's sole assignment of error is well-taken, Accordingly, the judgment of the acting judge is reversed, and the matter is remanded for further proceedings consistent with this opinion.
 __________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., O'NEILL J., concur.