OPINION
This is an appeal brought by the State from an order suppressing evidence in the Defendant's prosecution on an OMVI charge. The findings of fact which the court made and on which it relied state:
 "1. On May 16, 2001, Patrolman Snodgrass of the Ohio State Highway Patrol was on routine duty in the area of Derr Road and Home Road in the City of Springfield, Ohio.
 "2. The patrolman was facing an easterly direction on Home Road at the Derr Road intersection when Defendant, Deborah Stutsman, was preparing to turn left onto Derr Road.
 "3. Defendant negotiated the turn without problem and proceeded North on Derr Road. Patrolman Snodgrass made a right turn onto Derr Road after Defendant was in her northbound lane on Derr Road, and proceeded to follow her northbound.
 "4. Patrolman Snodgrass testified that the Defendant committed no adverse driving infractions while driving her vehicle such as failing to stop for a traffic signal, improper lane change, weaving or the like.
 "5. He did testify that he paced the Defendant for speed and that she was over the 35 m.p.h. limit, traveling at about 50 m.p.h.
 "6. He activated his overhead lights on Derr Road fairly close to Santa Monica Drive, a residential road beginning on the west side of Derr Road. A videotape, taken by the officer, begins with the Defendant turning on her left turn signal to pull onto Santa Monica presumably in compliance with the officer's signal to pull over.
 "7. Defendant drove into a left turn lane indicated by arrow markings and waited for oncoming traffic, pulling onto Santa Monica and over to curbside without infraction.
 "8. A review of the videotape indicates no evidence such as slurred or incoherent speech, unstable actions on the Defendant's part, or unsteady gait. The tape reveals a compliant Defendant, producing an Ohio driver's license, a vehicle registration, and an insurance card. The court did not see Defendant fumble for these documents as she retrieved them. She retrieved them quickly and orderly, although at first she produced an insurance receipt rather than the card, which the court finds to be a reasonable reaction to the officer's request.
 "9. The patrolman indicated he smelled a strong odor of alcohol on Defendant or about her person. The court noticed that the patrolman did not get close to Defendant's driver side window at any time except when Defendant looked in the opposite direction to obtain her registration and insurance information.
 "10. The field sobriety tests were completed off camera and the court was not able to view Defendant's performance. The officer testified to the results on each test as basically not satisfactory. There is some question about whether or not the patrolman properly conducted and considered all of the standards for strict compliance with the NTSAA manual.
 "11. After conclusion of the testing, Defendant was placed under arrest.
 "12. The court has reviewed the entire videotape with audio three (3) times and concludes Defendant's speech in the audio was not inappropriate. It did not appear slow or slurred. In fact, Defendant held conversation with the patrolman throughout and he was able to understand her."
Based on the foregoing findings, the trial court concluded that the officer lacked a reasonable and articulable suspicion that Defendant was under the influence of alcohol. Therefore, his request that she submit to the field sobriety tests that resulted in her arrest violated her Fourth Amendment rights, and the violation required suppression of any evidence which those tests and her subsequent arrest produced.
The State appealed per Crim.R. 12(K). The State argues on appeal that the trial court erred when it suppressed the evidence gathered by the officer because the facts and circumstances before him presented a reasonable and articulable suspicion that Defendant was under the influence of alcohol.
On review, we concluded that the trial court's finding number 9 was equivocal with respect to whether the officer had, in fact, smelled a strong odor of alcohol. We remanded for a specific finding of fact on that issue. The trial court then made the following, additional finding:
 "1. The trial court finds the officer did not smell a strong odor of alcohol on Defendant or about her person. This finding does not find the officer's testimony not credible nor was such ever intended. Merely, the court finds the circumstances upon the officer concluded `strong odor' given his distance from the defendant, gleaned from the video, to be conclusory rather than factual."
Courts rarely reject the testimony of police officers on a lack of credibility finding. The trial court's finding conforms to that practice. Its further distinction between fact and the trooper's conclusions seems to be a distinction without a difference. Nevertheless, we take the trial court's further finding to be that, contrary to his testimony, Trooper Snodgrass did not smell a strong odor of alcohol on Defendant or about her person.
As the trial court is in a better position to evaluate witness credibility, we must uphold the trial court's findings of fact if they are supported by competent, credible evidence. State v. Dunlap (1995),73 Ohio St.3d 308. The trial court did not reject the officer's testimony for lack of credibility. It concluded merely that he was mistaken. From its decision, it is clear that the court relied on its review of a videotape of the stop recorded by a camera mounted in the trooper's cruiser. (Defendant's Exhibit 1.) We have also reviewed the videotape.
The videotape shows Trooper Snodgrass approaching Defendant's vehicle from the rear and then conversing with her through the open window of the driver's door. During the interview, he is less than a fully extended arm's length from the Defendant while she responds to his questions and also hands him her license, registration, and proof of insurance. At one point, the trooper bends down toward the open window, putting his face close to Defendant's. That entire process until Defendant exited her vehicle lasted two minutes and forty-five seconds, per the elapsed time displayed on the videotape.
Trooper Snodgrass testified that he has been an Ohio Highway Patrol trooper for almost six years. (T. 5). The Defendant stipulated that he is an experienced officer. Id. Trooper Snodgrass testified that his experience included approximately three hundred OMVI arrests. (T. 14).
Trooper Snodgrass gave the following testimony in response to the prosecutor's questions concerning what had happened that caused him to ask the Defendant to submit to field sobriety tests:
 "Q. When you approached the vehicle, what if anything did you notice about the physical condition of the driver?
"A. Nothing I specifically recall as I approached.
"Q. OK, then what happened when you approached?
"A. I asked to see her driver's license.
"Q. Then what happened?
 "A. She gave me her driver's license. I then asked for registration and the insurance card. At that point, she gave me a receipt for insurance, but forced me to ask again for registration.
"Q. Then what happened?
 "A. As I was speaking to her, I noticed that her eyes were glassy and her speech was somewhat slow, and I smelled an odor of an alcoholic beverage coming from the vehicle.
"Q. Could you describe the strength of that odor?
"A. It was a strong odor.
"Q. What happened next?
 "A. I asked her if she had been drinking, and she indicated she had had two beers.
 "Q. Did she tell you at that time where she had consumed those beers?
"A. No, ma'am, I don't believe so.
"Q. OK, what happened next?
 "A. I asked her to exit the vehicle in order to perform field sobriety testing." (T. 8-9).
Trooper Snodgrass also testified that, while Defendant was yet inside her vehicle, "she told me that she had been baking and drinking." (T. 28). He further stated that after her arrest, Defendant said "she had drunk a whole bottle of wine while she was baking." (T. 30). This later, post-arrest statement cannot, of course, be considered for purposes of the reasonable and articulable suspicion test prescribed by Terry v. Ohio
(1968), 392 U.S. 1, in determining whether the officer could ask Defendant to submit to field sobriety tests. However, it may be considered in determining whether Trooper Snodgrass had, in fact, detected a strong odor of alcohol coming from inside Defendant's vehicle, as he testified.
Trooper Snodgrass testified that, in his opinion, Defendant was under the influence of alcohol. (T. 31). An officer's subjective judgment does not resolve the Terry inquiry, however. The facts on which the officer acted to engage in the intrusion, aided by the inferences that a reasonable, experienced officer would draw, must be judged objectively.State v. Stamper (1995), 102 Ohio App.3d 431. Considered in that way, they must constitute "articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion."Terry, 392 U.S., at 21. Whether such facts existed is a matter for judicial determination in deciding a motion to suppress evidence.
Nothing that we can find in this record belies Trooper Snodgrass's statement that he smelled a strong odor of alcohol coming from inside Defendant's vehicle. Therefore, the trial court's finding that he did not is not supported by competent, credible evidence, and we are not bound by it. Dunlap. Indeed, our review of the record, including both the trooper's testimony and the videotape on which the trial court relied, contains competent, credible evidence to support the contrary conclusion; that Trooper Snodgrass did, in fact, smell a strong odor of alcohol coming from inside the Defendant's vehicle.
The facts of a strong odor of alcohol, Defendant's glassy eyes and slow speech, coupled with her admission that she'd been drinking, albeit the typical "two beers," constitute facts which, taken together with the rational inferences drawn from them, portray a reasonable basis for Trooper Snodgrass's suspicion that Defendant was under the influence of alcohol while she operated her vehicle. He was only required to suspect it, not to know so. That suspicion justified the further intrusion of asking Defendant to submit to field sobriety tests.
The suppression order from which the appeal was taken will be reversed and the matter will be remanded for further proceedings on Defendant's OMVI charge. Our remand does not preclude findings on any other grounds on which Defendant's motion to suppress was predicated.
BROGAN, J. concurs.