JOURNAL ENTRY and OPINION
{¶ 1} The City of North Olmsted appeals from a judgment of the Rocky River Municipal Court which granted Kenneth L. Tackett's motion to suppress evidence in connection with a driving under the influence charge following a police encounter in a private parking lot. On appeal, the city contends the police lawfully approached Tackett's vehicle and therefore the court should have denied his motion to suppress. For the reasons given below, we reject this contention and therefore affirm the judgment of the court.
 {¶ 2} The record reveals that around 11:30 p.m. on October 11, 2001 Patrolman Robert Wagner observed Tackett sitting in the passenger seat of a Ford F-250 pickup truck in the parking lot of Panini's Restaurant at 26116 Lorain Road, North Olmsted, Ohio. Wagner pulled his cruiser into a parking space next to the truck and looked in. Wagner became concerned when Tackett did not "look at him" and he then turned on his deck light to illuminate the area. He waited ten seconds and when he did not get a response, he exited his cruiser, took out his flashlight, walked to the passenger side window and observed what he believed to be marijuana spread out on a book held in Tackett's lap. He then illuminated his flashlight and ordered him out of the vehicle. Wagner then arrested and transported him to the North Olmsted police department and charged him with having an open container, possessing marijuana, and possession of drug paraphernalia. Tackett paid a $300.00 bond and was released. In the city's brief in opposition to the motion to suppress, it claimed that at the end of his shift, Patrolman Wagner informed Patrolman Butcher about Tackett's earlier arrest in Panini's parking lot. Further, in that pleading, the city also alleges that Butcher drove past the parking lot at 1:00 a.m. and reported that the truck was "still parked there." Patrolman Butcher drove past the lot again at 1:09 a.m. and observed the truck moving with a burned out headlight. At that point, he made a U-turn and testified at the hearing on the motion to suppress that he did so in order to "make a stop" of the vehicle. However, Tackett never entered the roadway; instead, he backed up and re-parked his vehicle in the parking lot. Patrolman Butcher then pulled into the adjacent Ganley Auto lot and walked over to Tackett's vehicle.
 {¶ 3} Upon reaching the vehicle, Butcher began talking with Tackett about the headlight and noticed a strong odor of alcohol and that his eyes were bloodshot. Butcher then administered three field sobriety tests and thereafter arrested him for driving under the influence of alcohol. Butcher initially testified that Tackett's operation of his vehicle in a private parking lot with an inoperable headlight was a violation of a city ordinance and that he approached the parked vehicle with the intent to issue that citation. On cross-examination, however, he stated that he did not cite Tackett for having a defective headlight because driving on private property without a headlight is not illegal.
 {¶ 4} Tackett received a citation for driving while under the influence of alcohol, and he subsequently filed a motion to suppress the results of his failed field sobriety tests, arguing that Butcher did not have reasonable, articulable suspicion to stop his vehicle, lacked probable cause to arrest him, and failed to administer the field sobriety tests in compliance with the uniform procedures promulgated by the National Highway Traffic Safety Administration.
 {¶ 5} On February 15, 2002 the court held an evidentiary hearing and granted Tackett's motion to suppress evidence which had been filed in Case No. 01 CRB 2414[1]; the court then asked for post-hearing briefs on the remaining DUI charge, and on March 8, 2002, granted Tackett's motion to suppress the D.U.I. evidence.
 {¶ 6} The city now appeals from that later decision raising two assignments of error. The first assignment states:
 {¶ 7} "THE GRANTING OF A MOTION TO SUPPRESS BASED ON AN INVALID STOP BY THE LOWER COURT IS ERROR WHEN THE OFFICER NEVER STOPPED THE AUTOMOBILE BUT WAS ONLY MAKING AN INQUIRY AS TO A MECHANICAL DEFECT TO GO FURTHER AND FIND THAT THERE WAS AN ILLEGAL ARREST IS ALSO ERROR IN THAT THE OFFICER SET OUT ADEQUATE GROUNDS TO ARREST THE DEFENDANT FOR OPERATING A AUTOMOBILE WHICH UNDER THE INFLUENCE OF ALCOHOL [SIC]."
 {¶ 8} The city argues the court erred when it determined that Officer Butcher lacked reasonable articulable suspicion of criminal activity when he approached Tackett's vehicle in the parking lot, and that the motion to suppress should have been denied because Butcher merely made an inquiry about a mechanical defect and upon doing so, he encountered a potential violation of the law, viz, operation of a vehicle while under the influence of alcohol. Tackett argues that the encounter constituted an illegal stop and that the court correctly held that Butcher did not have justification to do so.
 {¶ 9} At the hearing, Butcher testified that he observed a vehicle in the parking lot with a burned out headlight. Believing the car belonged to Tackett, he made a U-turn to make a stop of the vehicle. Butcher initially testified that the burned out headlight constituted a violation of a local ordinance and that he walked to Tackett's vehicle with the intent to issue a ticket. On cross-examination, however, he testified that he approached the vehicle as a courtesy to inform the driver about the defective headlight, and that he did not issue a ticket to Tackett because he knew it is not against the law to drive a vehicle on private property with a burned-out headlight.
 {¶ 10} The issue presented to us then concerns whether Butcher had reasonable articulable suspicion to initiate a stop of the vehicle.
 {¶ 11} The scope of our review regarding a motion to suppress was set forth by this court in State v. Curry (1994), 95 Ohio App.3d 93, 96, as follows:
 {¶ 12} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Schiebel
(1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor
(1993), 85 Ohio App.3d 623, 627."
 {¶ 13} A traffic stop constitutes a seizure of a person under theFourth Amendment of the United States Constitution. Whren v.United States (1996), 517 U.S. 806, 809-810. To justify a particular intrusion, the officer must demonstrate specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. See City of Maumee v. Weisner, 87 Ohio St.3d 295, citingTerry v. Ohio, 392 U.S. 1, 21. The Fourth Amendment permits police stops of motorists in order to investigate a reasonable suspicion of criminal activity. Weisner, 87 Ohio St.3d at 299.
 {¶ 14} The standard for judging the constitutional validity of an investigative stop is well established under both federal and state law.State v. Stamper (1995), 102 Ohio App.3d 431, 436. The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." See, also, Section 14, ArticleI of the Ohio Constitution ("The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated[.]").
 {¶ 15} In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88. See, also,State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. The court reviewing the officer's actions must give due weight to the officer's experience and training, and view the evidence as it would be understood by those in law enforcement. Andrews at 88, citing UnitedStates v. Cortez (1981), 449 U.S. 411, fn. 2, 66 L.Ed.2d 621,101 S.Ct. 690. See, also, Stamper at 438.
 {¶ 16} The Supreme Court of Ohio has found several factors to be relevant when determining whether an officer possessed reasonable suspicion to initiate a traffic stop. Some of those factors include: (1) whether the stop occurred in a high crime area; (2) whether the officer knew of recent criminal activity in the area; (3) the time of the stop; (4) whether the defendant's conduct was suspicious; and (5) the officer's training and experience. See, generally, State v. Freeman (1980),64 Ohio St.2d 291, 295; Andrews at 88; Bobo at 179.
 {¶ 17} In this case Butcher testified that he intended to make a stop of the vehicle when he saw it operating with only one headlight. The transcript reveals the following:
 {¶ 18} "Q. Anything unusual about the vehicle or was there anything wrong with that vehicle?
 {¶ 19} "A. The vehicle had a headlight out, not working. The headlight wasn't working on the right side.
 {¶ 20} "Q. Is that a violation of our ordinances?
 {¶ 21} "A. That is, yes.
 {¶ 22} "Q. As you proceeded then, were you then going to enforce those laws and ordinances in the City of North Olmsted regarding the light being out?
 {¶ 23} "A. Yes.
 {¶ 24} "Q. And tell the Court how you carried out, please.
 {¶ 25} "A. The vehicle was at the entrance/exit of Panini's. It appeared they were getting ready to pull onto Lorain Road. I made a U-turn on the vehicle to make a stop."
 {¶ 26} Here, we are confined to the record as it is presented to us, and we are obligated to apply the law to the facts as they exist. Butcher testified he made the u-turn to stop the vehicle. Our inquiry goes to the issue of whether he had reasonable suspicion to do so.
 {¶ 27} The evidence falls short of establishing reasonable suspicion to justify this stop. Rather, it suggests that Butcher monitored Tackett throughout the evening and investigated based on his personal suspicion, not based on reasonable suspicion of criminal behavior on Tackett's part. Butcher admitted he made a stop of the vehicle, but also admits that he did not observe Tackett violate any traffic law; here, the city argues that Butcher approached Tackett as a courtesy to inform him about the broken headlight, but Butcher's own testimony does not support this position. Therefore, the city's assignment of error is without merit and is overruled.
 {¶ 28} The second assignment of error states:
 {¶ 29} II. "THE TAKING OF TESTIMONY IS NOT A GAME BUT A SEARCH FOR THE TRUTH AND IT IS WRONG FOR A TRIAL COURT HEARING A MOTION TO PREVENT ONE OF THE PARTIES FROM OFFERING EVIDENCE THAT WOULD RESOLVE AN ISSUE SUCH AS IDENTIFICATION."
 {¶ 30} Apparently, the city contends the court precluded the opportunity to offer evidence at the suppression hearing. However, the city has not specifically pointed to the court's denial in the record.
 {¶ 31} App.R. 12(A)(2) permits the reviewing court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Here, the city's brief fails to separately argue this assignment of error. Hence, pursuant to App.R. 12(A), we disregard it. See Nehls v. Quad-K. Advertising, Inc. (1995),106 Ohio App.3d 489.
 {¶ 32} For the foregoing reasons, we affirm the judgment of the court. Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Case No. 01 CRB 2414 was dismissed on July 29, 2002.