The STATE of Ohio, Appellee,

v.

DROGI, Appellant.*

[Cite as *State v. Drogi* (1994), 96 Ohio App.3d 466.]

Court of Appeals of Ohio,
Belmont County.

No. 93–B–14.

Decided Aug. 22, 1994.

*Frank Pierce,* Belmont County Prosecuting Attorney, and *Timothy D. Oakley,* Assistant Prosecuting Attorney, for appellee.

*Andrew J. Warhola, Jr.,* for appellant.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1994), 71 Ohio St.3d 1444, 644 N.E.2d 407.

GENE DONOFRIO, Judge.

Appellant, John M. Drogi, Jr., brings this appeal as a result of the denial of his motion to suppress evidence in connection with his charge of D.U.I. before the Western Division Court of Belmont County, Ohio.

On July 19, 1992, State Highway Patrol Trooper Roger Clark was working special overtime duty due to a country western music festival known as "Jamboree in the Hills." The trooper testified as to observing appellant's vehicle leave a restaurant at approximately 11:00 p.m., turn right onto State Route 331, and make another right turn onto the entrance ramp to Interstate 70. The trooper followed appellant and observed him one-half mile ahead with no traffic in front of or next to appellant's vehicle on the divided highway.

While approaching appellant's vehicle on the interstate, the trooper observed the left front tire drive one foot over the center line. Appellant's vehicle then went right towards the edge line, then left without crossing the center line and eventually across the right edge line. The trooper did not indicate how far appellant drifted right across the edge line.

After stopping appellant, the trooper noted the odor of an alcoholic beverage, that appellant had a flushed face, bloodshot eyes, and slurred speech. The trooper then administered a gaze nystagmus test and coordination tests to the appellant at the scene. After concluding appellant had failed, the trooper placed appellant in custody.

The trooper then transported appellant to the State Highway Patrol barracks in Belmont County. After implied-consent warnings were given, appellant took a breath-alcohol test, registering .156. Appellant was then placed under arrest for violation of R.C. 4511.19(A)(3), driving while intoxicated, and was also given a citation for failure to travel in marked lines, a violation of R.C. 4511.33.

On September 15, 1992, the appellant filed a motion to suppress evidence surrounding his arrest, namely:

1. Results of the appellant's coordination and/or sobriety tests, including but not limited to chemical tests of the appellant's blood-alcohol level;

2. Statements taken from or made by the appellant; and,

3. Observations and opinions of the police officer who stopped appellant and/or arrested and/or tested the appellant regarding the appellant's sobriety and/or blood-alcohol level.

The court below overruled appellant's motion on October 23, 1992. As a result, appellant changed his plea from not guilty to no contest on February 8, 1993.

That same day, the court found appellant guilty of driving while intoxicated and granted a stay of execution pending appeal.

Appellant presents this timely appeal alleging two assignments of error. The first assignment of error alleges:

"The trial court erred as a matter of law in overruling the defendant/appellant's motion to suppress since there is insufficient evidence in the record to support a finding that the state trooper had a reasonable and articulable suspicion that the defendant was violating any traffic laws."

For the following reasons, we hold that appellant was stopped without a reasonable and articulable suspicion and therefore the first assignment of error is with merit.

It is undisputed that to justify the stop of a motorist, the officer must have an "articulable and reasonable suspicion that [the] motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673. See, also, *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237.

The appellee, state of Ohio, contends that Trooper Clark did in fact have a reasonable and articulable suspicion warranting a stop of appellant's vehicle. Appellee argues that once Trooper Clark observed appellant weaving, he had not only the right but the duty to stop appellant, that weaving is erratic driving sufficient to justify a stop, and that this does not change if the road is not as crowded as at other times.

Further, appellee contends that Trooper Clark stopped appellant only after observing him drift across the center line, then drift back, then back again, eventually crossing the right line. Appellee argues even if this amounted to only slightly poor driving, Trooper Clark had a reasonable and articulable suspicion, allowing him to stop appellant.

However, appellant maintains that Trooper Clark lacked the necessary suspicion and that his only purpose in following appellant, even after observing him exit the restaurant and enter the interstate with no problems, was to arrest appellant for D.U.I. To support this point, appellant notes that Trooper Clark continued to follow appellant on the interstate even after first observing no traffic violations, and only upon appellant's slight drifting across the edge line did Trooper Clark institute the stop.

R.C. 4511.33 reads:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully

moving in two or more substantially continuous lines in the same direction, the following rules apply:

"(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

In State v. Gullett (1992), 78 Ohio App.3d 138, 604 N.E.2d 176, the Court of Appeals for Highland County, in affirming the trial court's interpretation of this statute, concluded that the mere crossing of an edge line, regardless of circumstances, does not constitutionally justify a stop. There the court upheld a motion to suppress evidence in connection with defendant's D.U.I. conviction where the defendant was stopped for twice crossing the right-hand edge line, absent evidence of how long or how far. The court held that where a vehicle is driven on a roadway with no other traffic present, and there are no other signs of erratic driving or speeding, except the edge line incidents, the right of privacy outweighs the necessity of a stop, when the appropriate standard is used, i.e., totality of the circumstances.

Similarly, in State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, the court held that suppression of evidence was required where the defendant twice moved out of his lane of travel by one tire width over a two-mile stretch of highway. The court held that such minor weaving did not constitute a reasonable and articulable suspicion justifying the stop. The court distinguished the case before it from others where weaving justified an investigative stop by noting that the other cases involved repeated weaving within a short distance or involved erratic driving rather than activities consistent with innocent behavior that were neither erratic nor a threat to safety.

In the case at bar, the totality of the circumstances test leads to a similar conclusion. The appellant, prior to the stop, displayed behavior similar to that in the previously cited cases. Appellant was travelling on a four-lane divided interstate. No one was threatened or endangered by appellant's actions. The evidence fails to disclose how long the crossings were over the lines. Also, the trooper did not indicate how far the right edge line was crossed. There is no evidence of erratic driving other than what can be considered as insubstantial drifts across the lines.

Many courts, including this one, have held, and should continue to hold, that weaving may be sufficient to justify an investigative stop. But here the evidence shows no erratic driving, speeding, or other criminal activity so as to give Trooper Clark a reasonable and articulable suspicion for which to stop appellant's vehicle. Appellant was driving his vehicle, for the most part, within a single lane of traffic on a four-lane divided highway. Absent the observation of erratic

driving or a traffic violation, appellant's right to privacy outweighs any general suspicion a police officer may have.

Appellant's first assignment of error has merit and is hereby sustained.

Appellant argues in his second assignment of error that the trial court erred in overruling his motion to suppress evidence due to a lack of probable cause to arrest the appellant for D.U.I. This issue is settled by our discussion of the first assignment of error since the initial stop was improper. Subsequent evidence obtained as a result therefrom was therefore improperly seized and subject to suppression. The appellant's second assignment of error is also sustained.

For the foregoing reasons the judgment of the trial court is reversed and appellant is discharged.

*Judgment reversed.*

Cox, P.J., and O'Neill, J., concur.