[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Aaron J. Ward here appeals from his conviction for D.U.I. in the Darke County Court of Greenville, Ohio. Ward claims that the trial court erred by not suppressing evidence of his blood-alcohol content ("BAC") because he was subjected to a traffic stop without reasonable suspicion. We find, however, that police could properly stop Ward after his car intruded into the lane of oncoming traffic. Ward also argues that the evidence should be suppressed because the state failed to show compliance with the administrative code by testing the BAC equipment for radio-frequency interference. (RFI). We agree that police failed to perform an RFI check as required under Ohio Adm. Code3701-53-04. Consequently, we reverse the judgment of conviction.
 I.
The relevant facts of the case are as follows:
On January 23, 1998 at approximately 2:00 in the morning, officer Eric Roberts was driving his police cruiser on Broadway Street in Greenville. As he approached the intersection of East Water Street and Broadway, he saw Aaron Ward's car making a right turn onto northbound Broadway. Ward made a wide right turn, straying partially into the oncoming lane. Roberts testified that, at the time, he thought the car might strike the back of the police cruiser. When Roberts turned around, he saw that Ward's left tires were completely across the double-yellow line. Ward then drove with his car over the center line for approximately one-hundred yards.
After observing this behavior, Officer Roberts made a U-turn and signaled for Ward to pull over. Upon approaching the car, Roberts saw a six-pack of beer and noticed the smell of beer coming from inside the car. Roberts gave Ward a horizontal nystagmus test and registered six out of six possible indicators of intoxication. Ward walked slowly and stumbled when asked to walk a straight line, heel-to-toe. During the one-leg-stand test, Ward put his foot down several times and he slurred his speech while counting.
Roberts concluded that Ward was under the influence of alcohol and placed him under arrest. After he was taken to the police station, Ward was given a breath test, which indicated a BAC level of .18 per cent. Appellant was then charged with D.U.I. and driving left of center in violation, respectively, of Sections 434.01(a)(3) and 432.01 of the Greenville Codified Ordinance.
Ward moved the trial court to suppress the BAC test results challenging the constitutionality of the traffic stop and the conditions under which the test was administered. After a hearing on March 10, 1998, the trial court denied the motion. On June 11, 1998, Ward pleaded no contest to the D.U.I. charge. In exchange the second charge was dismissed. The trial court found Ward guilty and sentenced him to ten days in jail and a $500.00 fine. The court then suspended seven days of the jail sentence. Ward now appeals from his conviction.
 II.
In his first assignment of error, Ward asserts:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE OFFICER STOPPED THE CAR BASED ON PROBABLE CAUSE THAT THE DRIVER HAD COMMITTED A TRAFFIC OFFENSE.
 The initial inquiry regarding the constitutionality of a traffic stop is whether the police officer's observations "lead him to reasonably suspect" that the person he wishes to detain has committed, is committing, or will commit a crime. Berkemer v. McCarty (1984) 468 U.S. 420, 439, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317. Ward argues that his crossing the center line was mnot a proper basis for effecting a traffic stop. In his appellant's brief, he cites a number of Ohio cases in which courts have held that a minor marked-lane violation does not give reasonable grounds for a stop, including State v. Glasscock
(1996), 111 Ohio App.3d 371, 375-376; State v. Johnson (1995), 105 Ohio App.3d 37; State v. Drogi (1994) 96 Ohio App.3d 466, 469-470; State v. Williams (1993), 86 Ohio App.3d 37, 43; and State v. Gullett (1992), 78 Ohio App.3d 138, 145.
Ward conscientiously notes that the continuing vitality of the cases on which he relies may be in some doubt to the extent that they viewed driving outside the marked lane as an invalid pretext for a D.U.I. stop. Recent precedent has held that a pretextual stop does not violate the fourth amendment so long as the stop follows an actual traffic violation. Whren v. UnitedStates (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89;Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus. This court has held that the Gullett line of cases has been, in effect, overruled by Whren and Erickson. State v. Stephens (May 22, 1998), Montgomery App. No. 16727, unreported. Nevertheless, even after Whren and Erickson, other Ohio courts have continued to follow the rule of Gullett and its progeny, holding traffic stops invalid if the precipitating lane violation was de minimis. Statev. Brite (1997), 120 Ohio App.3d 517; Ontario v. Mathews (Oct. 23, 1997), Richland App. No. 4970, unreported, at 4. In Matthews, the Fifth District court explained that minor drifting was not a violation of R.C. 4511.33 which only requires a vehicle maintain its lane as "nearly as is practicable." Mathews, supra, at 3-4.
We need not re-address whether the Gullett rule stands afterWhren and Erickson. The instant case does not present us with ade minimis lane violation and is, therefore, distinguishable. Here, Ward crossed the center line into the oncoming traffic lane, thus differentiating this case from those where the defendant crossed the right line onto the berm. See Gullett,78 Ohio App.3d at 140 (Defendant ""drifted over to the right and crossed the white edge line."); Brite, 120 Ohio App.3d at 521; Johnson105 Ohio App.3d at 41; Mathews, supra, at 2. In those cases involving an intrusion into the oncoming lane where the court has found the stop unreasonable, the intrusion has been minor and without any danger. Glasscock, 111 Ohio App.3d at 371; Drogi,96 Ohio App.3d at 467; Williams, 86 Ohio App.3d at 42. Here, in contrast, Ward's crossing made Officer Robinson believe that he was going to strike the rear of his police cruiser. That crossing constituted a substantial marked-lane violation. Consequently, the resulting traffic stop was proper.
Ward's first assignment of error is overruled.
 III.
Ward raises as his second assignment of error the following:
 THE TRIAL COURT ERRED IN OVERRULING THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT IT SUBSTANTIALLY COMPLIED WITH STATE REGULATIONS PERTAINING TO MAINTENANCE OF THE INTOXILYZER 5000.
 Evidence given at the suppression hearing indicated that, before Ward took his breath test, the Intoxilyzer equipment used by the Greenville police had not received a radio frequency interference (RFI) survey since August 21, 1996. Between that time and Ward's test, the machine was serviced by the manufacturer. Ward cites prior case law requiring that a new RFI survey be conducted whenever "any electronic component of the instrument is changed, other than replacement of parts with original equipment replacement parts or factory-authorized replacement parts meeting the same specifications as the original equipment parts" State v. Yoder (1993), 66 Ohio St.3d 515, 517; State v. Breeze (1993), 89 Ohio App.3d 464, 469 (both citing former Ohio Adm. Code 3701-53-02(C)(2)(e), 1989-90 Ohio Monthly Record 1313(A), eff. May 5, 1990). Failure to conduct the RFI test required under the Administrative Code is sufficient ground for suppressing the result of a breath test. See State v. Hominsky (1995), 107 Ohio App.3d 787, 795.
Ward argues that the state failed to prove that the machine had been serviced with factory-authorized replacement parts meeting the same specifications. Thus, he claims, the failure to conduct an RFI survey merits suppression. The state counters that evidence showing the manufacturer performed the repairs should have been sufficient to prove that factory-authorized parts were used meeting the same specifications as the original parts.
This dispute over the type of part used to repair the Intoxilyzer is inconsequential. Former Ohio Adm. Code3701-53-02(C)(2)(e) requiring a survey after a non-standard repair was repealed effective July 7, 1997. On that date, a new rule was adopted to regulate RFI testing, Ohio Adm. Code 3701-53-04. That rule provides, in relevant part:
 (A) A senior operator shall perform an instrument check on approved evidential breath testing instruments and a radio frequency interference (RFI) check no less frequently than once every seven days in accordance with the appropriate instrument checklist as set forth in appendices A to D to this rule. The instrument check may be performed anytime up to one hundred and ninety-two hours after the last instrument check.
* * *
 (2) The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced.
 (B) An instrument check shall be made in accordance with paragraph (A) of this rule when a new evidential breath testing instrument is put in service or when the instrument is returned after service or maintenance or repairs, before the instrument is used to test subjects.
 This was the rule in effect when Ward was given his breath test on January 23, 1998.
The RFI check required under the new rule is a less rigorous test than the RFI survey required under former 3701-53-02(C). Nevertheless, the check must now be conducted both every seven days and any time the instrument is returned after service, maintenance, or repairs. Here, the record shows that no RFI check of any kind was conducted for nearly a year and a half before Ward took a breath test. (Tr. 28). The failure to conduct such a test violated the administrative rules pertaining to maintenance of the Intoxilyzer. For this reason, we must sustain Ward's second assignment of error.
Section 434.01(a)(3) of the Greenville Codified Ordinance is a strict liability statute for which the critical question is the accuracy of a BAC test. See Defiance v. Kretz (1991), 60 Ohio St.3d 1,3. Having found that Ward's test results were not admissible, we reverse his conviction.
Judgment reversed.
WOLFF, J., and YOUNG, J., concur.
Copies mailed to:
Jeffrey L. Amick
John H. Rion
Hon. Gene R. Hoellrich