OPINION
The present appeal arises following the decision of the Belmont County Court North accepting the no contest plea made by Richard Carter ("appellant") to one count of driving under the influence of alcohol in violation of R.C. 4511.19(A) (1), (A) (3). On appeal, appellant challenges the propriety of the trial court's decision denying his motion to suppress. For the reasons set forth below, the decision of the trial court is affirmed.
 I. FACTS
On November 29, 1998 at approximately 4:21 a.m. appellant was operating a motor vehicle in Pease Township, Belmont County. During his course of travel, appellant entered the eastbound lanes of Interstate 70. As he did so, Sergeant J. L. Bernard of the Ohio State Highway Patrol pulled behind appellant's vehicle and began following him. Trooper Bernard paced appellant's vehicle and determined that he was only traveling between 45 and 50 m.p.h. in a 65 m.p.h. zone. Additionally, Trooper Bernard viewed what he would later describe as very erratic driving by appellant. In particular, appellant's vehicle was "weaving" and "jerking" on the roadway. Moreover, appellant's vehicle frequently crossed the center line which divided the two eastbound lanes. All of this conduct occurred over the course of approximately a one mile stretch of highway. Based upon these observations, Trooper Bernard effectuated a stop of appellant's vehicle.
Upon approaching appellant's vehicle, Trooper Bernard detected the obvious odor of alcohol and discovered that appellant's speech was slurred. As a result, it was requested that appellant exit his vehicle so as a battery of field sobriety tests could be performed. Due to the fact that appellant performed poorly on all of the tests and was unable to complete them as demonstrated by Trooper Bernard, he was placed under arrest and was transported to the Ohio State Highway Patrol barracks. At the barracks, the BAC Datamaster test was administered in order to determine appellant's breath alcohol content. This testing produced a reading of .165 which was well in excess of the legal limit of alcohol. Hence, appellant was placed under arrest for operating a motor vehicle while intoxicated in violation of R.C. 4511.19 (A) (1), (A) (3) and failing to drive within marked lanes in violation of R.C. 4511.33(A).
On December 2, 1998, appellant entered a written plea of not guilty in the Belmont County Court North. Subsequently, appellant filed a motion to suppress on the grounds that Trooper Bernard did not have probable cause to initially stop his vehicle. As support for this motion, appellant cited to this court's decision in Statev. Drogi (1994), 96 Ohio App.3d 466 for the proposition that a deminimis lane violation does not give rise to the requisite reasonable suspicion to justify a stop. The trial court conducted a hearing on appellant's motion on January 13, 1999 at which time both appellant and Trooper Bernard provided testimony. Upon weighing the testimony and applying the law, the trial court determined that appellant's motion should be overruled as Trooper Bernard's stop was appropriate. In light of this finding, appellant decided to withdraw his not guilty plea and enter a plea of no contest to the charge of operating a motor vehicle while intoxicated. In return, the state agreed to dismiss the charge of failing to drive within marked lanes.
Upon accepting appellant's change of plea, the trial court determined that sufficient evidence was on record to support a finding of guilt. As such, the trial court immediately proceeded to sentencing and imposed the following: ten days of jail time with seven days suspended on the condition that appellant complete a driver intervention program; $200 fine in addition to $66 court costs; six month operator's license suspension; and one year of probation. In response to the trial court's decision, appellant filed a notice of appeal and a request for stay of execution of sentence on February 3, 1999. The trial court agreed to stay the execution of sentence as related to the jail time and fine only. On appeal, appellant raises a single assignment of error.
 II. ASSIGNMENT OF ERROR
Appellant's sole assignment of error on appeal reads as follows:
 "THE TRIAL COURT ERRED IN FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE FOR THE INITIAL STOP OF DEFENDANT'S VEHICLE."
It is appellant's position that Trooper Bernard. did not have sufficient "probable cause" to justify the initial stop of his vehicle. Appellant relies upon this court's decisions in Drogi,supra and State v. Crites (June 18, 1998), Mahoning App. No. 96-CA-67, unreported, for the proposition that appellant's manner of driving on November 29, 1998 was not so egregious as to justify a stop. Appellant asserts that weaving within his own lane and crossing the center line on numerous occasions over the course of one mile of observation time is not sufficient to establish the requisite probable cause. Said conduct is equated to mere deminimis lane violations which did not warrant an initial stop by Trooper Bernard. Under this assignment of error, appellant also criticizes the trial court's application of Dayton v. Erickson
(1996). 76 Ohio St.3d 3 as he never asserted that the stop was pretextual in nature.
The state responds by first arguing that appellant failed to properly preserve for appeal the issue of the trial court's denial of the motion to suppress. By pleading no contest, appellant is viewed as having waived the right to challenge the trial court's decision on appeal. In the event this court chooses not to dismiss appellant's appeal, appellee asserts that probable cause was established due to the fact that appellant crossed the center line on a number of occasions. This conduct constituted a marked lanes violation pursuant to R.C. 4511.33(A) and, thus, justified a stop. Dayton, supra. Appellee believes that Drogi is distinguishable from the case at bar as the defendant in Drogi was found to have only drifted an insubstantial distance over the lines on the roadway on two occasions. In the present case, appellant drifted over the center line on numerous occasions in a relatively short distance. Similarly, Crites is viewed to be distinguishable as the defendant therein crossed over the center line on one occasion prior to being stopped rather than committing a number of marked lanes infractions.
 A. STANDARD OF REVIEW
This court has previously concluded on numerous occasions that our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Lloyd (1998),126 Ohio App.3d 95, 100; State v. Winand (1996), 116 Ohio App.3d 286,288 citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604,608. Such a standard of review is appropriate as "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548 quoting State v. Venham
(1994), 96 Ohio App.3d 649, 653. As a reviewing court, we must accept the trial court's factual findings and the trial court's assessment of witness credibility. State v. Brown (Sept. 7, 1999), Belmont App. No. 96-BA-22, unreported at 2 citing State v.Anderson (1995), 100 Ohio App.3d 688, 691. However, once we have accepted those facts as true, we must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Williams (1993), 86 Ohio App.3d 37, 41.
 B. APPLICABLE LAW
While appellant couches his argument in terms of probable cause, the appropriate inquiry is whether Trooper Bernard had the requisite reasonable suspicion in order to justify the initial investigatory stop. This court has stated time and time again that an officer does not need probable cause to make a traffic stop. Instead, the officer needs a reasonable suspicion based upon specific and articulable facts that a traffic law is being violated. See LLoyd, Winand and Brown supra; State v. Latham
(July 12, 1999), Belmont App. No. 96-BA-30, unreported; State v.Brown (June 1, 1999), Columbiana App. No. 97-CO-27, unreported. This well established principle arises from both Ohio and U.S. Supreme Court authority. State v. Andrews (1991), 57 Ohio St.3d 86; State v. Bobo (1988), 37 Ohio St.3d 177; Delaware v. Prouse
(1979), 440 U.S. 648; Terry v. Ohio (1968), 392 U.S. 1.
In order to establish that a law enforcement officer possessed a reasonable suspicion to justify an investigatory stop, appellee must be able to point to specific, articulable facts which when taken together with the rational inferences that arise therefrom reasonably warrant an intrusion. Andrews and Terry,supra. Involvement in criminal activity or the commission of a traffic offense generally will provide ample justification to warrant an investigatory stop. Lloyd, Winand and Latham, supra.
When reaching a conclusion as to the validity of a stop, a court must look to the totality of the circumstances surrounding the incident in question. Andrews and Bobo, supra. Moreover, these circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react as the events transpire. Andrews at 87.
 C. ANALYSIS
In first addressing appellee's contention that appellant waived the opportunity to assert error on appeal, we hold that such is without merit. The Ohio Supreme Court has previously ruled that a plea of no contest does not waive a defendant's appeal from an adverse ruling on a motion to suppress. City ofDefiance v. Kretz (1991), 60 Ohio St.3d 1, 5. The mere fact that appellant did not make a specific reservation on the record is irrelevant. Hence, we will proceed with a determination as to the merits of appellant's assignment of error.
A review of the record in the case at bar leads this court to the conclusion that Trooper Bernard possessed the requisite reasonable suspicion so as to justify an investigatory stop. During the course of the hearing on the motion to suppress, Trooper Bernard testified extensively as to the events which transpired immediately prior to the stop of appellant's vehicle. Trooper Bernard indicated that as he followed appellant on Interstate 70, he observed appellant "frequently" cross the center line on the roadway which divided the driving and passing lanes. When appellant would cross the center dividing line he did so with one wheel of the vehicle. The manner in which appellant operated his motor vehicle was characterized as being erratic as he was weaving back and forth across the center line. Additionally, Trooper Bernard clarified that he felt appellant's driving was erratic as he was weaving and "jerking" as he drove down the roadway. While Trooper Bernard did not specify on how many occasions appellant crossed the center line, he did indicate that it was done more than two or three times. Throughout his testimony, Trooper Bernard used such terms as "frequently" and "numerous" to describe how often appellant crossed the center line of the eastbound lanes. All of said conduct occurred over less than one mile of Interstate 70 prior to the investigatory stop.
Based upon this testimony, the trial court was well within its discretion to find that appellant's conduct gave Trooper Bernard reasonable suspicion to stop the vehicle. Specific, articulable facts were provided to the court in regards to appellant's driving which if believed would support a finding that the stop was justified. That is, appellant clearly strayed from his own lane of travel on multiple occasions within the one mile of driving which Trooper Bernard observed him. Moreover, in addition to the frequent crossing of the center line, Trooper Bernard witnessed weaving and jerking of appellant's vehicle which he determined to constitute erratic driving. The fact that these actions occurred in a relatively short distance of roadway rather than over several miles provides further support for the trooper's decision to effectuate a stop. When these events in conjunction with the reasonable inferences which arise therefrom are viewed together, it is clear that the intrusion was warranted. Moreover, this court must not lose sight of the fact that due deference must be given to the police officer's training and experience as it related to his decision to stop a vehicle based upon reasonable suspicion that a traffic offense had occurred. Andrews, supra.
While appellant would have this court reverse the decision of the trial court based upon our holding in Drogi, supra, such an action is not appropriate as Drogi is distinguishable from the facts in the case at bar. In Drogi, the police officer stopped defendant's vehicle after he was seen crossing the center line on one occasion and the right edge line on one occasion. The crossing of these lines was viewed as insubstantial as the police officer could not point to any activity by defendant which could be viewed as erratic. Id. at 469. Therefore, it was determined that the arresting officer did not have reasonable suspicion to make an investigatory stop. Id. However, in reaching this decision we specifically held that the occasion could arise where weaving would be sufficient to justify an investigative stop. Id.
In the event the weaving was accompanied by erratic driving, speeding or other criminal activity, a police officer could have reasonable suspicion for which to stop a vehicle. Id. This position was reiterated by this court when it decided State v.Gibson (Apr. 4, 1995), Columbiana App. No. 92-C-21, unreported.
In the present case, we are not faced with a situation where all that was observed was two insubstantial drifts across lines on the roadway. As previously discussed, appellant frequently crossed the center line and was driving in an erratic manner. Appellant's vehicle weaved and jerked on the roadway which raised the suspicions of Trooper Bernard to the point that he felt an investigatory stop was necessary. The regularity of appellant's actions in crossing the center line in such a short distance is more suggestive of impaired driving rather than a minor traffic irregularity. As such, this conduct cannot be viewed as constituting merely de minimis marked lanes violations.
Finally, we note that appellant's criticism surrounding the trial court's citation to Erickson, supra, is without merit. The Ohio Supreme Court in Erickson merely reiterated the fact that an investigatory stop is not unreasonable in the event the arresting officer views what he determines to be a traffic violation. While the court goes on to state that the police officer's subjective intent is not to be considered in determining whether a stop was justified, that portion of the court's decision is not relevant to the present case. Here, the simple fact is the investigatory stop was justified based upon Trooper Bernard's observations.
In light of the foregoing analysis, the decision of the trial court denying appellant's motion to suppress is affirmed. The totality of the circumstances in the present case support the trial court's finding that appellant's actions gave Trooper Bernard the requisite reasonable suspicion so as to justify the investigatory stop.
Donofrio, J., concurs. Waite, J., concurs.
 _________________________ JOSEPH J. VUKOVICH, JUDGE