This is an appeal from the judgment of conviction and sentence of the Athens County Municipal Court, which found Defendant- Appellant Larry Pratt guilty of driving under the influence of alcohol, in violation of R.C. 4511.19 (A) (1). Appellant challenges the trial court's denial of his motion to suppress evidence. We affirm.
 STATEMENT OF THE CASE
On July 15, 1999, Sergeant Jeffrey Scholl of the Ohio State Highway Patrol stopped appellant on State Route 33 in Athens County, Ohio. Sergeant Scholl charged appellant with failing to stop at a stop sign, in violation of R.C. 4511.43 (A), driving under the influence of alcohol, in violation of R.C. 4511.19 (A) (1), and driving with a prohibited concentration of alcohol, in violation of R.C. 4511.19 (A) (3). Appellant pled not guilty to the charges against him.
On September 13, 1999, appellant filed a motion to suppress any evidence derived from the traffic stop. Appellant alleged that Sergeant Scholl did not have a reasonable, articulable suspicion of criminal activity to justify the stop. The trial court held a hearing on the motion on September 30, 1999.
At the hearing, Sergeant Scholl testified that he encountered appellant at approximately 12:57 a.m. on the morning of July 15, 1999. Sergeant Scholl was traveling southbound on U.S. Route 33. As he passed the intersection between Route 33 and the Chauncey Exit, Sergeant Scholl observed appellant driving on the exit toward Route 33. Appellant was approximately one hundred feet from the intersection when Sergeant Scholl first noticed him. When Sergeant Scholl was approximately two hundred to three hundred yards beyond the intersection, he watched in his rearview mirror as appellant turned right onto northbound Route 33 without stopping at the stop sign at the Chauncey Exit. Sergeant Scholl turned around in the median and pursued appellant north on Route 33.
Sergeant Scholl stopped appellant some 1.5 to 2.3 miles north of the intersection in question. Sergeant Scholl asked appellant why he had run through the stop sign, and appellant responded that he had been too lazy to shift gears. As Sergeant Scholl talked to appellant, he noticed a strong odor of alcohol, and that appellant's eyes were bloodshot and his speech was slurred. After appellant performed poorly on several field sobriety tests, Sergeant Scholl placed him under arrest.
On cross-examination, Sergeant Scholl admitted that he did not observe appellant driving erratically, and that his only reason for stopping appellant was the stop sign violation. Appellant argued that the alleged stop sign violation was insufficient to justify the stop because Sergeant Scholl did not testify that he had appellant in continuous observation from the time that he first observed appellant until the time that appellant turned onto Route 33. Appellant also argued that R.C. 4511.43 (A) actually requires drivers to stop at a marked stop line, not the stop sign itself, and that Sergeant Scholl did not testify as to the existence or location of such a stop line at the intersection in question. Thus, appellant contended that the traffic stop was invalid because appellee produced no evidence as to either the existence or location of a stop line, thereby failing to establish that appellant had violated R.C. 4511.43 (A).
Following the hearing, the trial court overruled appellant's motion to suppress the evidence derived from the traffic stop. While the parties presented extensive argument concerning whether or not Sergeant Scholl had established the existence of a stop line at the intersection, the court found the dispositive issue to be whether or not appellant came to a complete stop before proceeding into the intersection. The court further found that Sergeant Scholl's testimony was credible, given Sergeant Scholl's extensive experience with the Ohio State Highway Patrol.
On October 28, 1999, appellant entered a plea of no contest to the charge of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19 (A) (1). In exchange, appellee dismissed the charges under R.C. 4511.19 (A) (3) and 4511.43 (A).
Appellant filed a timely notice of appeal challenging the trial court's denial of his motion to suppress. He presents two assignments of error for our review.
ASSIGNMENT OF ERROR NO. I:
 THE TRIAL COURT ERRED IN FINDING THAT THERE WAS REASONABLE ARTICULABLE SUSPICION TO STOP THE DEFENDANT'S VEHICLE.
 ASSIGNMENT OF ERROR NO. II:
 THE TRIAL COURT ERRED IN ALLOWING DEFENDANT'S PREMIRANDA STATEMENTS INTO EVIDENCE.
 OPINION I.
In his First Assignment of Error, appellant argues that the trial court erred in finding that Sergeant Scholl had a reasonable, articulable suspicion to justify the traffic stop.
An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact. When hearing a motion to suppress, the trial court acts as the trier of fact and is in the best position to evaluate the evidence and judge the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357,582 N.E.2d 972. We must accept the trial court's factual determinations as long as some competent, credible evidence supports them. State v. Harris (1994), 98 Ohio App.3d 543,649 N.E.2d 7. However, we conduct a de novo review of the applicable legal principles. Id.
Under the Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, a police officer may briefly stop and detain an individual for investigatory purposes if the officer has a reasonable suspicion that the individual is involved in criminal activity. Terry v.Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Section14, Article I of the Ohio Constitution provides similar protection against investigatory stops unsupported by any reasonable suspicion of criminal activity. State v. Andrews
(1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. The officer's reasonable suspicion must be based on specific and articulable facts. Id.
Appellant cites a number of cases in which we have ruled that minor deviations from a car's lane of travel, without more, are insufficient to justify an investigatory stop. See State v.Gullett (1992), 78 Ohio App.3d 138, 604 N.E.2d 176; State v.Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; State v.Brite (1997), 120 Ohio App.3d 517, 698 N.E.2d 478. As appellant argues, other districts have reached similar conclusions. See,e.g., State v. Drogi (1994), 96 Ohio App.3d 466, 645 N.E.2d 153;Mason v. Loveless (1993), 87 Ohio App.3d 264, 622 N.E.2d 6. The instant case is distinguishable from these "weaving car" cases because Sergeant Scholl testified that he observed appellant run through a stop sign. Appellant's failure to stop at the stop sign, standing alone, gave Sergeant Scholl a reasonable basis to initiate the traffic stop. See Whren v. United States (1996),517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.
Appellant argues, however, that R.C. 4511.43 (A) requires a driver to stop at a marked stop line, not at a stop sign. Sergeant Scholl did not testify as to the existence of a stop line at the intersection. Appellant argues that, without such testimony, appellee could not establish that appellant violated the statute and, therefore, Sergeant Scholl did not have a reasonable basis to initiate the traffic stop. The trial court properly rejected this argument.
R.C. 4511.43 (A) provides in relevant part:
 (A) Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.
As the trial court noted at the conclusion of the hearing on appellant's motion to suppress, the gist of R.C. 4511.43 (A) is that a driver approaching an intersection with a stop sign must come to a complete stop before entering the intersection. Sergeant Scholl testified that there is a stop sign at the intersection between Route 33 and the Chauncey exit. Thus, appellant was required to come to a complete stop at some point, whether it was at a stop line, a cross walk, or "at the point nearest the intersecting roadway where [he had] a view of approaching traffic." Sergeant Scholl testified that appellant did not stop at any point as he proceeded through the intersection, which is a clear violation of the statute and sufficient justification for the traffic stop.
Finally, appellant contends that the evidence does not support the conclusion that Sergeant Scholl was in a position to observe appellant run the stop sign. Appellant notes that Sergeant Scholl testified that he witnessed the stop sign violation in his rearview mirror, and that he did not testify that he kept appellant in continuous observation. Appellant also presents a series of calculations in which he estimates that, based on Sergeant Scholl's estimates of the speed of each vehicle and the distances they traveled, appellant would have had between.64 and 6.62 seconds to come to a full stop while he was out of Sergeant Scholl's view. Thus, appellant argues that the trial court erred in relying on the sergeant's testimony.
As appellee argues, appellant's calculations were not presented as evidence in the trial court, so we may not consider them on appeal. However, even if we accept appellant's primary contention, that Sergeant Scholl did not keep appellant in continuous observation, we need not automatically reverse the judgment of the court below. Rather, we are bound to accept the trial court's decision to believe Sergeant Scholl's testimony as long as that decision is supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726.
Sergeant Scholl, a nineteen-year veteran of the Ohio State Highway Patrol, testified that he has made thousands of traffic stops over the course of his career. He further testified that Route 33 curved to his advantage to observe appellant in his rearview mirror, that he had an unobstructed view of the intersection, and that appellant clearly drove through the intersection without stopping at the stop sign. Even if Sergeant Scholl did not keep appellant in continuous observation, he was in a position to observe the intersection and determine whether or not appellant came to the required full stop. We find competent, credible evidence in the record to support the trial court's factual finding that appellant failed to stop at the stop sign.
For the reasons stated above, appellant's First Assignment of Error is OVERRULED.
 II.
In his Second Assignment of Error, appellant argues that the trial court erred in failing to suppress any statements that appellant made before Sergeant Scholl read him the Miranda
warnings. Specifically, appellant contends that Sergeant Scholl's initial question regarding why appellant had run the stop sign constituted custodial interrogation. Appellant argues that the trial court should have suppressed his response — that he had been too lazy to shift gears — as being in violation ofMiranda.
The state may not use statements obtained during a custodial interrogation of a criminal defendant unless the defendant was advised of certain constitutional rights prior to questioning.Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444, 86 S.Ct. at 1612,16 L.Ed.2d at 706. An individual is in custody if considering the totality of the circumstances, a reasonable person in the individual's position would believe that he or she is not free to end the encounter and walk away. State v. Gumm (1995), 73 Ohio St.3d 413,653 N.E.2d 253.
As appellee argues, the United States Supreme Court has held that brief questioning by a police officer during a traffic stop does not constitute custodial interrogation. Berkemer v. McCarty
(1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. TheBerkemer Court noted that a routine traffic stop temporarily deprives the driver and passengers of their freedom of movement. However, the Court also noted that Miranda was concerned with the inherently coercive nature of police interrogation of a suspect in custody. The Court found that a brief, temporary detention during a traffic stop does not raise the same concerns as the type of full custodial interrogation contemplated by the Miranda
Court. Thus, the Berkemer Court found that a motorist involved in a routine traffic stop is not "in custody" for purposes of Miranda. Id. at 440, 104 S.Ct. at 3150, 82 L.Ed.2d at 334-335.
In the instant case, we find that Sergeant Scholl's questioning of appellant as to why he had run the stop sign did not constitute custodial interrogation. This questioning occurred at the outset of the traffic stop, before Sergeant Scholl placed appellant under arrest, and, indeed, before Sergeant Scholl even had appellant exit his vehicle. Furthermore, Sergeant Scholl testified that he routinely asks a motorist who has been stopped to explain his or her actions before issuing a traffic citation, in part to make certain that there is no emergency. In short, Sergeant Scholl's questioning of appellant is indistinguishable from the type of questioning of which the Berkemer Court approved.
Accordingly, appellant's Second Assignment of Error is OVERRULED, and the judgment of the Athens County Municipal Court is AFFIRMED.