OPINION
In this timely appeal Nancy A. Gross ("Appellant") challenges a decision of the Mahoning County Court denying her motion to suppress the results of a breath alcohol test and other evidence obtained when police stopped her vehicle for a traffic violation. She was subsequently convicted for driving while intoxicated based on this evidence.
Appellant proposes two grounds for reversal. First, she maintains that given this Court's decision in State v. Drogi (1994), 96 Ohio App.3d 466, the officer who stopped her lacked reasonable suspicion for the stop. Second, Appellant argues that the officer lacked probable cause to arrest her for driving while intoxicated because the field sobriety tests she failed were not administered in strict compliance with National Highway Traffic Safety Administration guidelines. In the discussion that follows, this Court affirms the judgment of the trial court.
The record establishes that on July 9, 2000, at 2:36 a.m., Trooper Michael Harmon of the Ohio State Highway Patrol was traveling south on State Route 7 in Beaver Township not far from the Ohio Turnpike, when he approached Appellant's blue Toyota Celica traveling in the opposite direction. (Tr. pp. 4, 23). Route 7 is a five-lane highway running north and south with two lanes in each direction and a fifth lane between them for turning. (Tr. p. 24).
As Trooper Harmon passed Appellant, he observed her vehicle drift partially from the right lane into the left lane then jerk back into the right lane. Trooper Harmon described what he saw as follows, "[s]he's in the right lane, and she goes one half of her vehicle into the left lane. She jerks back into the right lane." (Tr. p. 24). Trooper Harmon testified that operating a vehicle in this manner is a standard indication of drunk driving. (Tr. p. 9).
Trooper Harmon made a U-turn and pursued Appellant. After Appellant's vehicle crossed partially into the left lane for a second time, swerved back across the right-hand lane over the shoulder line and back, Trooper Harmon activated his lights and stopped her vehicle. (Exh. 3).
According to the Trooper, when he approached the Celica he immediately detected a strong odor of alcohol from Appellant. (Tr. p. 7). Appellant's eyes were bloodshot and glassy and she was holding an asthma inhaler in her hand. When Trooper Harmon explained that he had stopped Appellant because she had crossed out of her lane three times, Appellant responded that she was weaving because she had been reaching for her inhaler which had evidently rolled onto the floor of the front passenger side of the Celica. (Tr. p. 7).
Trooper Harmon subjected Appellant to three standard field sobriety tests. (Tr. p. 11). When Appellant failed all three tests, the Trooper concluded that she was under the influence of alcohol and she was arrested. Appellant admitted that she had consumed two and a half drinks between 10:00 p.m. and the time of the stop. Trooper Harmon waited 20 minutes after allowing Appellant to use her inhaler before administering a personal breath alcohol test ("PBT") on a calibrated portable device. According to the PBT, Appellant's alcohol level exceeded the legal limit. (Tr. pp. 46, 49-51).
Appellant was taken to the Canfield patrol post, where she submitted to another blood alcohol test known as the BAC Datamaster test. That test revealed a BAC level of .159. (Tr. p. 12). Trooper Harmon cited Appellant for driving while intoxicated ("DUI") in violation of R.C. §4511.19(A)(1)(3) and for failure to operate within the marked lanes of the road as required under R.C. § 4511.33.
Appellant moved to suppress the evidence obtained in connection with Trooper Harmon's stop and her subsequent arrest. After a hearing, the court denied the motion holding that, "* * * defendant failed to maintain control of her car within the lane markings," and, "[b]ased upon Daytonv. Erickson, the state trooper had probable cause to make the arrest." (April 13, 2001, Judgment Entry).
On May 11, 2001, Appellant pleaded no contest to the charges and the court entered an order suspending her license for 180 days. The court also ordered her to serve three days in county jail, pay a fine of $250.00, and submit to 12 months of probation. The court stayed her sentence pending the outcome of this appeal. Appellant filed a notice of appeal on June 6, 2001.
In her first assignment of error, Appellant maintains that:
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS BY FAILING TO CONSIDER DEFENDANT/APPELLANT'S CITED CASE STATE V. DROGI (1994) 96 OHIO APP.3d 466 AS TO THE DE MINIMUS NATURE OF THE ALLEGED VIOLATION."
Appellant maintains that in light of this Court's decision in State v.Drogi (1994), 96 Ohio App.3d 466, and given the de minimus nature of the violation involved, Trooper Harmon lacked the requisite basis for stopping her vehicle. Accordingly, any evidence recovered as a consequence of that stop should have been suppressed.
This Court has repeatedly held that a reviewing court will not disturb a trial court's ruling on a motion to suppress when it is supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286,288, citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604, 608. Since the trial court is in the best position to resolve questions of fact and evaluate witness credibility, this Court must accept the trial court's findings with respect to such issues. State v. Hopfer (1996),112 Ohio App.3d 521, 548. Issues of law arising out of the court's factual findings, however, are reviewed independently without deference to the trial court. State v. Brown (1996), 116 Ohio App.3d 477, 481.
The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during an automobile stop by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" under the Fourth Amendment.Delaware v. Prouse (1979), 440 U.S. 648, 653. As a consequence, an automobile stop that is unreasonable given the circumstances will violate this provision of the constitution. Id. at 659.
A police officer may stop a vehicle in accordance with constitutional principles only where he has a reasonable suspicion to believe that a traffic law is being violated. Pennsylvania v. Mimms (1977), 434 U.S. 106,109; State v. Bobo (1988), 37 Ohio St.3d 177; and State v. Carter (June 14, 2000), 7th Dist. No. 99 BA 7. To have such reasonable suspicion, an officer, "must be able to point to specific articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Terry v. Ohio (1968), 392 U.S. 1, 20-21. Reasonable suspicion is evaluated based on a totality of the circumstances. State v. Freeman (1980), 64 Ohio St.2d 291, para. one of the syllabus.
Whether a traffic stop violates the Fourth Amendment requires an objective assessment of a police officer's actions in light of the facts and circumstances then known to the officer. United States v. Ferguson
(6th Cir. 1993), 8 F.3d 385, 388. That assessment requires an examination of the officer's actions at the time of the traffic stop. The officer's subjective motivations for initiating the stop are irrelevant to the analysis. Dayton v. Erickson (1996), 76 Ohio St.3d 3 at 6. Thus, while the constitution forbids traffic stops that are unreasonable under the circumstances, police may use such stops as pretexts for further investigation as long as the officer has a reasonable suspicion for affecting the stop. Whren v. United States (1996), 517 U.S. 806, 810;Erickson, supra, at syllabus; and State v. Lazenby, 7th Dist. No. 2000 CO 68, 2002-Ohio-1569.
A review of the record indicates that Trooper Harmon's decision to stop Appellant's Celica was entirely reasonable under the circumstances. There is no dispute here that Trooper Harmon saw Appellant's vehicle weave jerkily back and forth and then back again. Appellant conceded that her vehicle was weaving, explaining that she was fumbling around on the floor of her vehicle looking for an inhaler. Whatever her justification, Appellant took her eyes off the road for an undetermined period of time and operated her vehicle in a manner unquestionably prohibited under R.C. § 4511.33.
The stop was also justified because Appellant was operating her vehicle in a manner that was dangerous to others. Trooper Harmon testified that had another vehicle been traveling in the left lane when Appellant crossed into it, the two vehicles would have collided. (Tr. p. 24). Moreover, the fact that the stop occurred at 2:36 a.m. is an additional factor this Court may consider in determining whether the stop was proper under the circumstances. State v. Earich, 7th Dist. No. 00 CO 21, 2001-Ohio-3231.
Appellant concedes that a traffic violation occurred in this case, but contends that the de minimus character of the infraction failed to create a constitutional justification for the traffic stop. Appellant bases the aforementioned proposition on this Court's decision in State v. Drogi, supra, and its progeny. In Drogi, as in the instant case, police initiated the stop based on an ostensible violation of R.C. § 4511.33, which then led to the defendant's arrest for DUI. R.C. § 4511.33 sets out the rules for driving in marked lanes providing as follows:
"Whenever any roadway has been divided into two or more clearly marked lanes for traffic wherever within any municipal corporation traffic is lawfully moving in two or more substantially continuous lines in the same direction * * * [a] vehicle or trackless trolley shall be driven as nearly as practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
The defendant in Drogi sought to suppress the evidence against him, arguing that the violation, to the extent that there was one, was insignificant. The trial court denied the motion to suppress and this Court reversed, stressing that there was no evidence of erratic driving other than what this Court characterized as, "insubstantial drifts across the lines." Id. at 469. Specifically, we stated that,
"[A]n officer who observed a driver's left front tire cross one foot over centerline, go right towards edgeline, left without crossing centerline, and eventually across right edgeline, did not have `reasonable and articulable suspicion' to justify the stop; driver was traveling on four-lane divided interstate highway, no one was threatened or endangered by driver's actions, evidence did not indicate how long crossings were over lines or how far the right edgeline was crossed, and there was no other indication of erratic driving or speeding." Id. at syllabus.
Drogi has since been used to demonstrate that minuscule or de minimus violations, without more, will not justify an investigative stop.
In 1996, two years after this Court issued Drogi, the United States Supreme Court decided Whren v. United States, supra. In Whren the Court unanimously held that a pretextual traffic stop did not offend the constitution where the officer possessed an objectively reasonable basis for affecting the stop. In other words, no matter what the officer's underlying reason for making the traffic stop, if he saw a traffic violation being committed he could stop the car. Whren set out no exception for de minimus or insubstantial violations. Rather, the Court in Whren debunked such a notion with the following remarks:
"* * * we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that the infraction itself can no longer be the ordinary measure of lawfulness of enforcement. And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement." Id. at 818-819.
The Ohio Supreme Court's decision in Erickson, issued three weeks afterWhren's release, embraced an identical view. In Erickson, a Dayton police officer stopped a vehicle it was following after watching the driver fail to signal a turn. When the officer learned that the driver had a suspended license, he cited her for both violations. The driver moved to suppress the evidence obtained during the traffic stop when it became apparent that the officer stopped her for violating the turn signal requirement as a pretext to investigate whether she had been driving without a valid operator's license. Erickson, supra, at syllabus.
The Supreme Court resolved that a vehicle stop prompted by an observed traffic or equipment violation or reasonable suspicion that a traffic or equipment violation is occurring or has already taken place does not offend constitutional principles. In so concluding, the Court emphasized that the officer's ulterior motive for initiating the stop was irrelevant for purposes of Fourth Amendment review. Id. at 7. There, as in Whren, the Court eschewed any exception for de minimus traffic or equipment infractions, allowing little room for the case-by-case analysis this Court proposed in Drogi. See also State v. Wilhelm (1998),81 Ohio St.3d 444 (where the Supreme Court relied on Erickson in summarily reversing the lower court's decision to grant a motion to suppress after the lower court concluded that a minor traffic infraction could not provide justification for traffic stop.)
Accordingly, it appears that Drogi retained little precedential value in the wake of the Whren and Erickson decisions. For example, in Statev. Young, 12th Dist. No. CA2001-03-019, 2001-Ohio-8622, the court held that even a de minimus traffic violation provides probable cause for a traffic stop, and that any cases to the contrary were effectively overruled by the Ohio Supreme Court in Wilhelm. See accord, State v.Mehta (Sept. 4, 2001), 12th Dist. Nos. CA2000-11-232, CA2000-12-256 (court observed that cases challenging the propriety of traffic stops for de minimus violations were effectively overruled by the Ohio Supreme Court's decision in Wilhelm and Erickson); and State v. Spillers (March 24, 2000), 2nd Dist. No. 1504 (the court noted that Drogi had only limited precedential value in light of Whren).
Based on the above, in State v. Hicks (June 19, 2002), 7th Dist. No. 01 CO 42, this Court explicitly overruled the decision we reached in Drogi. See also, State v. Hodge (June 7, 2002), 7th Dist. No. 01 CA 76. Since the instant matter gives us no reason to rethink our recent decisions, we must conclude here that Trooper Harmon was justified in initiating the stop and Appellant's first assignment of error is overruled.
In her second assignment of error, Appellant contends that,
 "THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS SINCE THERE IS AMPLE EVIDENCE IN THE RECORD TO SUPPORT A FINDING THAT THE ARRESTING OFFICER DID NOT ADMINISTER STANDARDIZED FIELD SOBRIETY TESTS IN STRICT COMPLIANCE WITH STANDARDIZED TESTING PROCEDURES AS SET OUT BY THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION."
Appellant argues that the trial court should have suppressed the evidence against her because Trooper Harmon failed to conduct the field sobriety tests to which he subjected her in strict compliance with National Highway Traffic Safety Administration ("NHTSA") guidelines. Based on the record here, however, we conclude that Trooper Harmon had probable cause to cite Appellant for DUI and this assignment of error is overruled.
Probable cause exists when the arresting officer possesses reasonable suspicion supported by circumstances sufficiently strong to warrant a cautious individual in the belief that the person accused is guilty of the offense with which he or she is charged. State v. Medcalf (1996),111 Ohio App.3d 142, 147; citing, Huber v. O'Neill (1981),66 Ohio St.2d 28, 30.
When determining if probable cause exists to justify a DUI arrest, the trial court should consider whether at the moment of arrest the officer had sufficient information, based on reasonably trustworthy facts and circumstances, to cause a prudent person to believe that the suspect was driving under the influence of alcohol or drugs. State v. Homan (2000),89 Ohio St.3d 421, 427; citing, Beck v. Ohio (1963), 379 U.S. 89. The accused does not actually have to commit a crime for the arresting officer to possess such probable cause. Finn v. Village of Amelia (March 27, 1989), 12th Dist. No. CA88-10-073.
Appellant relies on State v. Homan, supra, for the notion that deviating from NHTSA standardized procedures during the administration of field sobriety tests will cause suppression of those test results. We agree that the court in Homan stressed that field sobriety tests must strictly conform to NHTSA guidelines. According to the court, even minor deviations from standardized procedures can severely bias the results. Id. at 426. Nevertheless, the court also recognized that, "the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests [have been] administered." Id. at 427.
The Homan decision further resolved that even where field sobriety test results have been excluded for failure to comply with test guidelines, other facts and circumstances may support the officer's probable cause determination. Id.; accord, State v. Winn, 7th Dist. No. 00 CA 229, 2001-Ohio-3465; and City of Cincinnati v. Jacobs, 1st Dist. Nos. C-010279, C-010280, C-010281, 2001-Ohio-4031.
Appellant maintains that the reliability of the field sobriety tests conducted in this case was compromised because Trooper Harmon did not strictly follow all NHTSA rules governing such tests. Specifically, Appellant complains that: 1) the Trooper failed to determine if she was wearing contact lenses before undertaking any Gaze Nystagmus testing; 2) while checking for horizontal nystagmus, the Trooper failed to check for vertical nystagmus; 3) Appellant was barefooted when she took the walk and turn and one legged stand tests; 4) the tests were administered on a slanted surface that had debris on it; 5) Appellant was not allowed to use her asthma inhaler until after the Trooper conducted the field sobriety tests; and 6) the tests were not recorded because the video camera mounted on top of the Trooper's cruiser was purportedly broken at the time.
After reviewing the record, however, we conclude that Trooper Harmon conducted the field sobriety tests reasonably in accordance with established practice.[1] At the hearing on Appellant's motion to suppress, Trooper Harmon, an eleven-year veteran with the State Highway Patrol, testified that his attention was first drawn to Appellant's vehicle because the Celica had drifted over the lefthand lane line and then shifted abruptly toward the right. (Tr. p. 8). Trooper Harmon testified that based on his experience, operation of a vehicle in such a manner is a standard indicator of drunk driving. (Tr. p. 9).
After he saw Appellant again weave to the left then overcorrect back to the right, Trooper Harmon stopped her car. When Trooper Harmon confronted Appellant, he immediately noted that she smelled of alcohol and that her eyes were glassy and bloodshot. (Tr. p. 28). These are all indications of intoxication exclusive of the field sobriety test results.
With respect to those tests, there is no requirement that the officer administer all of them, only that they are administered properly. In this case it appears that they were so administered.
Trooper Harmon testified that he could not recall whether he asked Appellant if she wore contact lenses before conducting the horizontal gaze nystagmus test. When questioned about the surface on which he administered the one legged stand and walk and turn tests, Trooper Harmon denied that they were conducted on slanted surface. Rather, he testified that he had noted the surface was "smooth, level and dry," and that nothing was otherwise significant about the surface. (Tr. pp. 38-39). As for Appellant's condition at the time she took the tests, the Trooper testified that Appellant did not complain of physical discomfort, nor did she appear to be in any way distressed. (Tr. p. 41).
Accordingly, these facts in their totality support Trooper Harmon's determination that Appellant was intoxicated and provided requisite probable cause to arrest her for DUI. Appellant's second assignment of error is consequently overruled.
Since we must overrule both of Appellant's assignments of error, this Court hereby affirms the judgment of the Mahoning County Area Court No. 5.
Donofrio, J., concurs; see concurring opinion
DeGenaro, J., concurs.
[1] It appears that Appellant submitted only a partial transcript of proceedings to the Court. It is Appellant's responsibility to affirmatively demonstrate error on appeal. Wray v. Parsson (1995),101 Ohio App.3d 514, 518; and App.R. 9. This Court cannot take into account evidence that is not before it. Accordingly, to the extent that proceedings in the trial court are missing from the record, this Court will presume that the proceedings before the trial court were proper.State v. Brandon (1989), 45 Ohio St.3d 85, 87.